PATRICK HART, Respondent, *v.* ELKAN NAUMBURG, *et al.,* Appellants.

*Court of Appeals, Oct.* 21, 1890.

Rev'g 50 Hun, 392.

*Master and servant. Negligence.*—A master, who furnishes an elevator and equipments of the most approved kind and pattern for the purpose to which it is to be applied, and has it carefully inspected by himself and by the regular inspector who furnished it, is not guilty of negligence, especially where the servant had the same, and even better, means and opportunities for ascertaining the defects than the master.

Appeal from judgment of the general term of the supreme court, affirming judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

*Joseph H. Choate,* for appellant.

*Chas. J. Patterson,* for respondent.

O'BRIEN, J.—The defendants are wholesale clothing merchants in the city of New York, and in the large building which they occupied there were three elevators, one for

passengers, one for both passengers and freight and the other, the one in question, an Otis platform sidewalk freight elevator. On the 23d of March, 1886, the plaintiff, then and for nineteen years previous a porter in the defendants' employ, was seriously injured while riding on the platform of this elevator, and this injury he claims was chargeable to the defendants' negligence. He brought this action to recover for the injuries thus sustained and on the trial the jury returned a verdict in his favor, and the judgment entered thereon has been affirmed by the general term.

The elevator in question had been in operation and use in the building since 1880, and this was the first accident that had occurred upon it. During this period of six years the plaintiff had been accustomed to ride upon it whenever he chose. It ran from the sub-basement to the level of the sidewalk on Mercer street, and was used for receiving and delivering goods. The evidence shows that at least 250 of precisely the same pattern and kind of elevators were in use in the city of New York. It was constantly looked after by one of the defendants, who rode upon it frequently for the purpose of seeing that everything connected with it was in good order, and every three months it was inspected, by direction of the defendants, by one of the inspectors of the manufacturer employed for that purpose. It had been thoroughly inspected less than three months before the accident and was then found to be in perfect condition. There is no proof in the record that any defect in the elevator, or its equipments, was ever brought to the notice of the defandants prior to the accident, or that they were aware that it was in any respect out of order.

At the time the accident occurred the plaintiff was riding upon the elevator from the sub-basement to the sidewalk, and when the platform had nearly reached the street level it gave way, or tipped to one side, letting the plaintiff fall to the bottom of the well-hole, breaking the bones of his thigh and arm, and otherwise severely injuring him.

The elevator was suspended on two sides with chains which wound around two drums on a shaft at the bottom of the well-hole. A check chain at the side of the well-hole controlled the motive power. The only defect that is claimed by the plaintiff to have existed at the time of the accident was in the suspending chains, which, he claims, were longer than was necessary, and when the platform was at its lowest point about a turn and a half of the chains still remained upon each drum, so that the shaft continued to revolve for some time after the platform reached its lowest point and the drums continued to pay out the chains till they became slack. Then, when the elevator was started up, the chains, being somewhat out of place, would wind irregularly around the drum, and when the elevator was moving this irregular winding of the chains caused them, or one of them, to slip over on to the shaft, tipping up the side of the elevator and causing the accident.

There is no evidence in the case, however, to show that the defendants ever knew of this irregular winding of the chains. They furnished an elevator and equipments of the most approved kind and pattern for the purpose to which it was to be applied, and it was carefully looked after and inspected by the defendants, and also by the regular inspector of the manufacturer who furnished it. This was all that the law exacted from the master. To hold upon this state of facts that the defendants neglected any duty which they owed the plaintiff, would be to require of them extraordinary and unusual precautions. We think there was no evidence upon which the jury could properly find that the defendants were guilty of any negligence in furnishing the elevator or its equipment, or in providing for its proper inspection from time to time as was necessary, in order to guard against accidents. Stringham *v.* Hilton, 111 N. Y. 188 ; 19 N. Y. State Rep. 621 ; Dobbins *v.* Brown, 119 N. Y. 188 ; 28 N. Y. State Rep. 957.

The plaintiff frequently rode upon the elevator, and it

does not appear that he considered it at all unsafe, although he knew of the alleged defect in the winding of the chains around the drums, and which seems to have been due to the manner in which it was operated and used. The defendants, long before the accident, had caused a notice to be placed in a prominent place near the elevator, forbidding all persons from riding thereon. At one time the engineer notified the plaintiff that the rules forbade his riding on this elevator, and refused to allow him to do so. The plaintiff thereupon appealed to one of the defendants who gave him permission to ride, and he continued to do so until the accident. While we do not think, as the case stands, that there was any evidence that the elevator, or its equipments, were unsafe or defective in consequence of any want of care, on the part of the defendants, yet, if it were otherwise, it is apparent that the plaintiff had the same means and opportunities for ascertaining the defects that the defendants had, and even better.

For these reasons the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except RUGER, Ch. J., not voting.