Thomas H. Stringham, Respondent, *v.* Henry Hilton et al., Executors, etc., Appellants.

A master is not bound to furnish the best of known or conceivable appliances; he is simply required to furnish such as are reasonably safe and to see that there is no defect in those which his employes must use.

The test is not whether the master omitted to do something he could have done, but whether, in selecting tools and machinery for the servant's use, he was reasonably prudent and careful, and whether those provided were, in fact, adequate and proper for the use to which they were to be applied.

These rules are not violated when machinery reasonably safe is furnished by the master, but which becomes unsafe when negligently or carelessly used; and if the servant is injured because of such negligent use by a co-servant, the master is not liable.

When an appliance or machine, not obviously dangerous, has been in daily use for a long time, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of negligence or carelessness.

In an action to recover damages for injuries received by plaintiff while employed in defendant's storehouse, it appeared that plaintiff was engaged in removing grain from the platform of a grain or freight elevator, when the engineer gave it an upward movement which continued until striking against a beam, the rope by which it was suspended broke and the platform fell to the ground floor carrying the plaintiff and inflicting the injuries complained of. The elevator, engine and appliance were proved to be of a kind commonly in use when they were put into the building, and also like those in common use in hotels, breweries, printing houses and public buildings. The motion of the elevator was entirely under the control of the engineer. The whole apparatus was put in under the direction of a manufacturer of many years experience,

who testified that he had hundreds of elevators then running similarly constructed for the carriage of freight and employes in charge; that they were put in, leaving a distance between the cross-beam of the elevator and the pulley beam above it, varying from six inches to three feet, a short distance being safer when the elevator was operated with a double rope as was the case here. This elevator had been in use for two years before the accident and was continued in use for several years down to the time of the trial without causing other harm and without complaint, and there was nothing to show that when used with ordinary and reasonable care any harm could result from it. *Held*, the evidence failed to establish a cause of action; and that plaintiff was not entitled to recover.

Also, *held*, that the injuries having been caused by the act of the engineer, plaintiff's co-servant in starting the elevator, the master was not liable for the improper performance of his duties.

(Argued October 3, 1888; decided November 27, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 23, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial

This action was brought to recover damages for injuries received by plaintiff while employed in the storehouse on the farm of Cornelia M. Stewart, deceased, defendant's testatrix, through the fall of an elevator therein. Pending the appeal to this court the defendant died and the action was revived and continued against her executors. The case is reported on a former appeal to this court in 100 New York, 516.

*Horace Russell* for appellants. The master is not required to use the latest or the best appliance. (*Burke* v. *Witherbee,* 98 N. Y. 562.) It is not sufficient to authorize the submission of a fact to the jury that there is a "scintilla of evidence," a mere surmise to the contrary. (*Dwight* v. *Ger. L. Ins. Co.,* 103 N. Y. 341.) The fact that the elevator had been operated two years before this accident, and afterwards for eight years, up to the time of the trial, without harm to any one, relieved defendant from any imputation of culpable imprudence or carelessness in using it. (*Laflin* v. *B. & S. R. R. Co.,* 106 N. Y. 141; *Burke* v. *Witherbee,* 98 id. 563; *Devlin* v. *Smith,* 89 id. 470, 476.)

*Charles C. Smith* for respondent. The defendant was responsible for the negligence, carelessness and omissions of duty of her agent and superintendent. (*Fuller* v. *Jewett*, 80 N. Y. 46; *Corcoran* v. *Holbrook*, 59 id. 517; *Plank* v. *N. Y. C. & H. R. R. R. Co..* 60 id. 607.) While the master has the right to use whatever machinery, mode or method he chooses to adopt in the prosecution of his business, and does not guarantee the safety of those in his employment, still he is bound to supply them with suitable and safe machinery and appliances, materials and accommodations, with sufficient and. competent co-workers, and to make and promulgate adequate rules and regulations for the conduct of his business in its ordinary run, and for any extraordinary occasion that may be reasonably anticipated. (*Gibson* v. *P. R. R. Co.*, 46 Mo. 163; Shear & Redf. on Neg. [4th ed.] §§ 187, 189, 194, 202, 203; *Marshall* v. *Stewart*, 33 Eng. L. & Eq. 1; *Stringham* v. *Stewart*, 100 N. Y. 516; *Slater* v. *Jewell*, 85 id. 61, 67; *Murphy* v. *B. & A. R. R. Co.*, 88 id. 146; *Painton* v. *N. C. R. R. Co.*, 83 id. 7; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 id. 334; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546; *Pantzar* v. *T. F. Mfg. Co.*, 99 id. 368; Thomp. on Neg. 972, 973.) If the defendant knew, or would have known with reasonable care and precaution. that there were defects or deficiencies in the construction of the elevator, and its operating machinery and appliances, from which danger was apprehended or was liable to occur, it was her duty to exercise diligence and to adopt precautionary measures to protect those in her employment from perils of which they were ignorant, and had no reason to anticipate. (Shear & Redf. on Neg. [4th. ed.] §§ 202, 203; *Dana* v. *N. Y. C. R. R. Co.*, 92 N. Y. 639; *Patterson* v. *Wallace*, 1 Macq. 748; *Walsh* v. *Peet Valve Co.*, 110 Mass. 23; *Coombs* v. *N. B. Cord Co.*, 102 id. 572; *Huddleston* v. *Lowell Ma. Shop*, 106 id. 282, 285; Whart. on Neg. § 212; Beach on Contrib. Neg. 372.) Ordinary care implies such watchfulness and precaution as are proportioned to the danger to be avoided, measured by the standard of common prudence and experience. (*Kain* v.

*Smith*, 89 N. Y. 375, 384; *DeGraaf* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 125, 130; *Smith* v. *Dock Co.*, 3 Law Rep. 6, 326.) It did not vary the circumstances or limit the ground of liability, because a particular part of the elevator merely was deficient in its structure, or ill proportioned and contrived, if the defendant knew that by reason thereof, and as it was used and employed by her workmen in the usual course of her business, it was dangerous and unsafe and liable to injure them, and took no measures to advise them of the peril, and made no provision for their security. (Thomp. on Neg. 980–983, and notes; Shear & Redf. on Neg. [4th ed.] §§ 189, 190, 194, 196, 202, 203; *Avilla* v. *Nash*, 117 Mass. 318; *Paulimes* v. *E. R. R. Co.*, 34 N. J. L. 131.) The master is chargeable with knowledge of the probable consequences of acts which he directs or of which he is cognizant — or should, by the exercise of reasonable care and precaution, have been cognizant — and it is his duty to point out to the servant latent dangers of which he is ignorant. (Thomp. on Neg. 980, 992, 996, and notes; *Perry* v. *Marsh*, 25 Ala. 650, 657; *Williams* v. *Clough*, 3 H & N. 758; *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521, 532; *O'Donnell* v. *Alleghany V. R. R. Co.*, 19 Week. Dig. [Ct. of App.] 414; *Vosburgh* v. *L. S. & M. R. R. Co.*, 94 N. Y. 374, 378; Beach on Contrib. Neg 361; Shear & Redf. on Neg §§ 194, 197, 203, 214.) In allowing plaintiff to use the elevator and to work on and around it, without any notice that he incurred any risk or danger in so doing, there was not only an implied but a direct assurance that it was adapted to and suitable and safe for him in the performance of his duty. (*Swords* v. *Edgar*, 59 N. Y. 28.) Plaintiff was justified, in the absence of any notice or knowledge to the contrary, in relying upon the care of his employer, and to rest in the assurance that she had taken proper precautions for his safety, and to assume that his fellow servants were competent and careful. (Thomp. on Neg. 980; Shear & Redf. on Neg. [4th ed.] §§ 91, 92, 212, 217; *Swords* v. *Edgar*, 59 N. Y. 28; *Kain* v. *Smith*, 89 id. 375; Beach on Contrib. Neg. §§ 95, 96; *U. S. Rolling Stock Co.* v. *Wilder*,

5 N. E. Rep. 92.) He did not assume or undertake, impliedly or otherwise, the risk of any negligence on the part of defendant that he was ignorant of, did not comprehend and had no reason to anticipate. (Shear & Redf. on Neg. [4th ed.] §§ 92, 185, 187, 188, 190, 198, 216, 217; Thomp. on Neg. 973, and notes; Beach on Contrib. Neg. 362; *Ford* v. *F. R. R. Co.*, 110 Mass. 240; *Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 206; *Stringham* v. *Stewart*, 100 id. 516; Pierce on Railroads, 379.)

*A. H. Dailey* for respondent. If the negligence of the master and co-servant co-operate in producing the injury to a servant, the master will be liable if he has omitted any part of the obligations imposed upon him by law; for instance, if he omits to exercise reasonable care and prudence in furnishing safe and suitable appliances for the use of his servants. (*Stringham* v. *Stewart*, 100 N. Y. 516, 526; *Fuller* v. *Jewett*, 80 id. 46; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 209; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 546; *Pantzer* v. *Tilly Foster M. Co.*, 99 id. 368; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 id. 566.) Care must be exercised commensurate with the danger to which a party is exposed, but the degree of care necessary to be exercised on a particular occasion is, generally of necessity, a question of fact. (*Stackus* v. *N. Y. C. R. R. Co.*, 79 N. Y. 464, 466; *Kain* v. *Smith*, 89 id. 375, 384.) Plaintiff having been directed by his superior to use the implement, whether, under these circumstances, he should be charged with knowledge and negligence, by reason of it, was for the jury. (*Gibson* v. *E. R. Co.*, 63 N. Y. 449; 20 Am. Rep. 552; *Abrahams* v. *Reynolds*, 5 H. & N. 143; *Senior* v. *Ward*, 1 E. & E. 385; *Hutchinson* v. *N. Y. N. & B. R. R. Co.*, 5 Exch. 343–354.) The fact that the elevator had struck before, and the defendant's superintendent knew there was danger, and gave plaintiff no warning, was negligence on his part. (Thompson on Neg. 994; *Chapman* v. *E. R. Co.*, 55 N. Y. 584; Cooley on Torts, 555–567; *Courtney* v. *Cornell*, 49 N. Y. Supr. Ct. 286; *Green* v. *Banta*, 48 id. 156; *Holden* v. *F. R. R. Co.*, 129 Mass. 268; *Coombs* v. *N. B.*

*Cord Co.*, 102 id. 572; *Patterson* v. *Wallace*, 1 Macq. 747; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282.) The servant does not accept risks latent in his employment, but it is the master's duty to inform him of them. (Wharton on Neg. §§ 210, 211; *Clarke* v. *Holmes*, 7 H. & N. 937, 943; *Ryan* v. *Fowler*, 24 N. Y. 410; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206.) The fact that the wire broke placed the burden upon defendant of showing that in its selection and in its continued use reasonable prudence and care were exercised. (*Filke* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Pantzar* v. *T. F. Min. Co.*, 22 N. Y. Week. Dig. 117; 3 Macq. 275; 2 id. 34; 49 N. Y. 522; *Booth* v. *B. & A. R. R. Co.*, 73 id. 40; *Corcoran* v. *Holden*, 59 id. 518.) The plaintiff properly relied upon the natural and legal obligation of the defendant to discharge her duty and not place him in a position of peril without due notice to him, and failing in that duty she becomes liable in damages for his injuries. (Sherman on Neg. § 395; *Ernst* v. *H. R. R. R. Co.*, 37 Barb. 292; *Mackey* v. *N. Y. C. R. R. Co.*, 35 N. Y. 75; *Newson* v. *N. Y. C. R. R. Co.*, 29 id. 383; *Booth* v. *B. & A. R. R. Co.*, 73 id. 36; *Russell Mfg. Co.* v. *N. J. Steamboat Co.*, 50 id. 121.)

DANFORTH, J. The parties were master and servant; the latter, in the course of his employment received an injury, for which he brought this action. He has recovered damages against the exception of the defendant to the submission of any question to the jury, and the judgment in his favor should stand if there is evidence which, upon any just construction, tends to show that the defendant had committed any negligence to give occasion to the hurt. If not, the law affords to the plaintiff no remedy.

It appeared that the defendant was the owner of a large farm, and, in connection with it, a storehouse, having therein an elevator moved by steam, and operated through an engine controlled by an engineer. The plaintiff was in her employ as a laborer, and while in the warehouse removing grain from

the platform of the elevator, it was given an upward movement which continued until, striking against a beam, the rope by which it was suspended broke, and the platform fell to the ground floor, carrying the plaintiff, and hence his injury.

Did this happen by reason of any defect in the original construction or its subsequent condition, or through the negligence of the engineer in operating the machine? Upon the first branch of this question the learned trial judge instructed the jury that "the defendant had a right to use in her storehouse any elevator and operating machinery she chose, provided she exercised reasonable care and prudence in having them safe and suitable; that she was not bound to use the most approved machinery or appliances in that business," and, as to the question in hand he said, "if the machine was insecure through carelessness on the defendant's part, she would be liable, but that the operating of the machine was strictly the duty of a fellow servant, and for negligence on his part she was not responsible." The action upon a former appeal was before this court (100 N. Y. 516), but upon a different record. We were then bound by a concession which narrowed the issues to those relating to contributory negligence on the plaintiff's part, and excluded any discussion as to the negligence of the defendant to furnish safe and adequate machinery for the performance of the work in question. Moreover, the facts established upon the trial since had, and to review which the appeal is taken, makes this a new case by presenting, for our determination, the very question then withheld, and which upon the former trial was left unanswered, the defendant on that occasion making no attempt to establish the safety of the elevator, but relying for a defense upon testimony tending to show that in using it the plaintiff was a mere volunteer, taking upon himself the risk of injury, and by his own conduct contributing thereto. As to that ground the defendant is silent. Upon the other, the one now presented, we think the appeal should succeed. The complaint charges that the elevator and

machinery were defective in their construction, in that they were unprovided with proper appliances for safety and were insecure and unsuited for the purpose to which they were applied, and, moreover, that the engineer was incompetent to perform the duties assigned to him. No fault is now found with the capacity or skill of the engineer, and the argument in behalf of the respondent and the printed briefs submitted in his behalf, attribute the accident to a defective machine or appliance, first, in failing to have a proper space overhead; second, in failing to have any safety clutches or automatic appliance to guard against the fall of the elevator if the rope broke; or, third, a device by which the engineer could ascertain where the elevator actually was in relation to the floor at which he wished it to stop. On the other hand, negligence and want of care on the defendant's part, in regard to the machine or any of its appliances, is denied, and the accident attributed to a mistake or error of the engineer in the management of his engine.

The verdict, in view of the judge's charge above quoted, shows that the jury were of the opinion that the machine was defective in its construction, or that it had become defective by reason of the owner's want of care. Is there any evidence to support that finding? We find none. There is no ground for an apprehension even that the machine or its appliances had been impaired by use, or that, for any reason, it was less safe or efficient than at first. Something is, indeed, said by one witnesss as to the rope showing signs of wear or abrasion, but the rope did not break where such condition appeared, nor in the course of its ordinary and proper use, but because it was exposed to an unnatural tension, in resisting, while checked by the pulley-beam, the whole power of the engine. If there was any defect it must have been in its original construction. Against that supposition the evidence is all one way. A master is not bound to furnish the best of known or conceivable appliances; he is required to furnish such as are reasonably safe (*Burke* v. *Witherbee*, 98 N. Y. 562; *Probst* v. *Delamater*, 100 id. 266), and to see that there is no defect in

those which his employes must use. (*Gottlieb* v. *Railroad Co.*, 100 N. Y. 462.) The test is not whether the master omitted to do something he could have done, but whether, in selecting tools and machinery for their use, he was reasonably prudent and careful; not whether better machinery might not have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied. These rules are not violated when such machinery becomes unsafe, only when negligently or carelessly used. (*King* v. *R. R. Co.*, 66 N. Y. 181; *S. C.*, 72 id. 607.)

The machinery consisted of an elevator, an engine and its appliances. They were conclusively proven to be of a kind very commonly in use when the one in question was put in, constituting, indeed, the ordinary and customary form of grain or freight elevators, and in frequent and common use in hotels, breweries, printing-houses and public buildings. The engine was a single cylinder, ten-horse power, link motion, operated by the use of the lever in starting and stopping, and also with a throttle valve similar to that of a locomotive, operated by the engineer. It was placed by the side of the elevator, rigged with a double rope of wire, which led directly from the elevator to the drum. The engineer's place was at the engine facing the drum, and by his evidence and that of others, it appears that its motion was entirely and easily under his control. He could stop the elevator at any point he chose by using the lever or throttle valve, and the rope was marked with white paint to indicate the different floors at which it might be required. The whole apparatus, was put in under the direction of a competent manufacturer of many years experience, who testified — and of that there was no contradiction — that he had hundreds then running, similarly constructed, for the carriage of freight and employes in charge of it, among others, miners, "lifting," he says, "thousands per day." They were put in leaving a distance between the cross-beam of the elevator and the pully beam above it, varying from six inches to three feet. The greater distance was the safest, but a short

distance, when there was a double rope, was safer than a greater distance with a single rope. And, having regard to a freight elevator, as distinguished from a passenger elevator, the witness for the plaintiff declares that one so constructed and tended, was "the usual method and safe." The space between the elevator and the beam above was in this instance eight inches, but all agree that operated as this was with a double rope, sixteen inches of rope must pass around the drum to raise the elevator to the beam. The elevator was intended as a freight elevator only ; it had a platform but no sides. It had been in use since 1879, and for two years at least before the accident, causing no harm and complained of by no one. The same machine was continued in use for several years afterwards, and down to the time of the trial with no different result, and there is nothing to show that, when used with ordinary and reasonable care, there was any reason to suppose harm or mischief could result from it. This fact brings the case directly within the rule that when an appliance or machine not·obviously dangerous has been in daily use for a long time, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of imprudence or carelessness.

Assuming the plaintiff's relation to the elevator to have been that of a passenger, he had ceased to be one at the time of the accident. He was going neither up nor down, nor was he intending to do either. He had been carried safely from the basement to his destination, a track or landing seven feet above the second floor, and thirty feet from the place from which he started ; he there got off on the landing. It is obvious that there he was perfectly safe, as safe as he could have been in any part of the building. He was on a floor and off the elevator and outside of it. He was there as an employe, dealing with a quanity of oats in a car, and whether he came there by the elevator or the stairs could have made no difference. It was his duty as a servant to remove the car from the elevator, and he was engaged in the performance of that duty. He stood on the edge of the landing and was pushing the car from the

elevator. His body, therefore, was, in fact, over the elevator, his feet upon the floor or landing, his hands having hold of the car. What then happened with which the construction of the elevator had anything to do ? Nothing.

Asked by his counsel " What is the reason you didn't get it " (the car) " off," he answered : " He " (the engineer) " started up too quick." The elevator was perfectly secure except for that act of the engineer. But that act cannot be so construed as to imply a defect in the condition of the machine, or negligence in the master who furnished it, relying upon the co-servant's reasonable care in its use. The machine was started by means of the lever, which was intended to serve that purpose. It could have been stopped within the space of an inch before it had moved half an inch. Why did he start it and why didn't he stop it ? Because he either heard or supposed he heard a signal to raise the elevator to a higher floor, or because through inattention or carelessness he moved the lever without a signal and without reflecting that it could have no occasion to go higher. Risk of danger from this source was a risk incident to the plaintiff's service. It was the act of a co-servant, done within the range of a common employment. As to this, also, it is apparent that whether the space between the position of the elevator and the beam above it had been six inches or three feet, could have made no difference. The engineer started to go to another floor, in his mind to go seven feet and upward ; there was no such floor. The plaintiff was not negligent, but his co-servant was. The act causing his injury pertained to the duty of his co-servant, and the master is not liable for its improper performance. One who engages in work with others takes the chances, not only of his own negligence, but of the negligence of which his fellow-servants may be guilty ; and it is as well settled as any rule can be that he cannot recover from the common master, damages in respect to the negligence of the fellow-servant any more than for damages arising from his own want of care.

In *McCosker's Case* (84 N. Y. 77), the yard master negligently at the wrong moment signalled to the engineer to back

his train, and, as a consequence, the plaintiff's intestate was killed; a recovery in his favor was reversed upon the principle on which the rule referred to stands. Many other cases might be cited, but it is unnecessary. The plaintiff has failed to make his case an exception to that rule, and the judgment in his favor should be reversed and a new trial granted, with costs to abide event.

All concur, except Ruger, Ch. J., not voting.

Judgment reversed.