JENNIE MARGARET MONTGOMERY, an Infant, by KATIE EGAN, her Guardian ad Litem, Respondent, *v.* LYMAN G. BLOOMINGDALE and JOSEPH B. BLOOMINGDALE, Individually and as Composing the Firm of BLOOMINGDALE BROTHERS, Appellants.

*Negligence — injury caused by the jolting of an elevator — when no neglect is shown on the part of the persons maintaining the elevator.*

In an action brought by an employee to recover damages for injuries sustained while riding in an elevator maintained by her employers, the plaintiff's theory was that a jolt or "wobbling" of the elevator, which was one of the concurring causes of the accident, resulted from the fact that the space between the shoes of the elevator car and the guides in the elevator shaft was too great, and that it was negligent and careless to use the elevator in that condition.

It appeared that four months before the accident new shoes and new guideways had been put in and lined up, the space between them not being more than was necessary to give it play; that in the ordinary course of the use of the elevator it would take two years for any considerable shrinkage to occur; that the elevator was inspected two months before the accident, and was then found to be safe for use, and there was nothing to show that from the time of such inspection down to the time of the accident anything happened to the elevator which would attract the attention of the defendants or their servants to any change in the condition of the elevator that would render it unsafe in any particular.

*Held,* that the proof did not establish any remissness or neglect upon the part of the defendants in the maintenance of the elevator, and that a verdict in favor of the plaintiff could not be sustained.

APPEAL by the defendants, Lyman G. Bloomingdale and Joseph B. Bloomingdale, individually and as composing the firm of Bloom-

ingdale Brothers, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of January, 1898, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the 20th day of January, 1898, denying the defendants' motion for a new trial made upon the minutes.

*Robert Thorne,* for the appellants.

*John J. O'Connell,* for the respondent.

PATTERSON, J.:

This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiff in an accident case.

The plaintiff, at the time of the occurrence, was between thirteen and fourteen years old, and was employed as a cash girl by the defendants, who carried on business in a large retail store in the city of New York. In the premises in which their business was conducted was an elevator used by employees, and which, according to the testimony of one of the witnesses for the defendant, was commonly called the employees' elevator. That elevator was also used at certain fixed hours of the day as a lift for ashes. In its original design it was a freight elevator. At about ten o'clock on the night of the 5th of October, 1885, the plaintiff was sent on an errand, which required her to go from the basement to the fourth floor of the defendant's store. She took the elevator, the car of which was so constructed that on three sides of it were iron lattice gates, commonly called folding gates. When the elevator was in motion these gates were closed, and, when closed, there was a gap between the floor of the car and the lower points of the lattice work. The car ran upon perpendicular guides at the sides of the well, and the bearing of the car upon these guides was by appliances called shoes. The plaintiff, on the occasion in question, entered the car, there being other girls with her. When the car had reached, in its ascent, some point between the third and fourth floors, the plaintiff's right foot was thrust through the opening at the bottom of one of the folding gates and came in contact with the casing or wall of the well or some projection, and she sustained injuries in consequence.

There is some evidence to show that the flooring of the car had

been worn by the friction of ash cans upon it, so that there was a slight incline from the middle towards the outer edge of the flooring, but not to any considerable extent. · The claim of the plaintiff was that the car, at the time she was thrown, suddenly vibrated or shook as by a jerk, or, as some of the witnesses say, " wabbled," and that the jerk was so violent that her foot was thrown out under one of the gates as above described. This result was attributed to the negligence of the defendants in maintaining and operating and allowing to be used by employees an unsafe or insecure appliance. The specification of negligence contained in the complaint is, that the defendants negligently, carelessly and wrongfully maintained and operated an elevator and its appurtenances, including the shaft in which the elevator was operated and the parts and appliances therewith connected, and that they were grossly negligent and careless in operating the elevator through the means of incompetent and unskillful employees, and in maintaining and operating the elevator and its appliances in an unsafe and dangerous condition. These allegations were denied by the defendant.

On the trial of the cause no evidence was offered as to the incompetency of the servant operating the elevator, and certain matters of fact in certain aspects were taken away from the jury by instructions given at the request of the defendant. The court charged that defects in the gates had nothing to do with the case as they were not shown to have contributed in any degree to the accident. The court also charged that the alleged defects in the floor were not shown to have been the proximate cause of the accident. Those two considerations were thus eliminated from the case as independent causes of the accident. Whether that was properly done we need not now inquire, but we have examined the record to ascertain if there is in the evidence sufficient to support a finding of negligence in the maintenance or operation and allowance of the use of an unsafe elevator, for that is the real issue. The duty incumbent upon the defendants was to provide a safe elevator for the use of their employees. It is entirely immaterial whether this apparatus was properly called a freight or a passenger elevator. The defendants could use any elevator or operating machinery they desired, provided reasonable care and prudence were employed in having it

safe and suitable. They were not bound to use the most approved machinery or appliances. In *Stringham* v. *Hilton* (111 N. Y. 195) it is said a master is not bound to furnish the best of known or conceived appliances. " He is required to furnish such as are reasonably safe (*Burke* v. *Witherbee*, 98 N. Y. 562; *Probst* v. *Delamater*, 100 id. 266) and to see that there is no defect in those which his employees must use. (*Gottlieb* v. *Railroad Co.*, 100 N. Y. 462.) The test is not whether the master omitted to do something he could have done, but whether in selecting tools and machinery for their use he was reasonably prudent and careful; not whether better machinery might not have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied. These rules are not violated when such machinery becomes unsafe, only when negligently or carelessly used. (*King* v. *R. R. Co.*, 66 N. Y. 181; *S. C.*, 72 id. 607.) "

The foregoing quotation indicates the rule applicable in this case with the qualification that if the machinery was negligently or carelessly used in an unsafe condition to the knowledge of the defendants, actual or imputable, the master's duty would not be fulfilled. So far as the construction of the elevator in question is concerned and its use, the evidence is convincing that it was not in and of itself unsafe. It had been in use for some years; it had been originally built for a freight elevator, but it had been used by the employees for a long time. It was not obviously dangerous. There is no evidence that any one was ever injured in or about the apparatus. It was under the observation of responsible servants of the defendants, who from time to time had made reports of its being out of repair in certain particulars, and repairs were always made. It is true that one of the defendants' expert witnesses on cross-examination is made to say that he did not regard it a safe elevator for passengers, but that was because he did not regard it as a passenger elevator at all. He subsequently withdrew that statement and distinctly testified that he did not mean to say that it was an unsafe elevator to carry passengers, but that what he meant was that it was not a passenger elevator at all, and that persons could ride in perfect safety upon it. The effect of all the testimony upon the subject of the apparatus, in and of itself being sufficient and safe, abundantly establishes that there was nothing in its construction which made it unsafe.

The attributed negligence, therefore, must relate altogether to the condition of the apparatus at the time of the accident; whether it was in such a defective condition as to render it unsafe. There was no evidence to show that the accident was due to the condition of the gates, nor to the condition of the floor, as independent causes, but it was shown by the testimony of two witnesses, the plaintiff and another child, that there was an oscillation of the car caused by the jerk which has been referred to. Putting the case as strongly for the plaintiff as may be, the accident resulted from the concurring conditions of the eccentric motion caused by the jerk, the incline of the floor which caused the plaintiff's foot to slip, and the opening under the gate which allowed her foot to pass under that gate and come in contact with the wall or casing of the elevator shaft. Are the defendants responsible for those conditions? Were they negligent in allowing the elevator to be used by the employees under such conditions?

It is shown that this elevator was periodically inspected. It also appears that it had been repaired recently. The last inspection was made in the month of August preceding the accident. The elevator was then found to be in good condition. The initial circumstance inducing the accident must have been, on the plaintiff's theory, the jolt or jerk which caused the eccentric vibration, and it is sought to account for that upon the claim that the interval or space between the guides and the shoes of the car was so great as to permit of this jolting or jerking, and that it was negligent and careless to use the elevator in that condition. These shoes were comparatively new; they were put on the ninth of June, prior to the accident, by the witness Potts, who put in new shoes, new guideways, and lined them up, and he swears that after those shoes were put on the lateral motion possible was a quarter of an inch; that it was a trifling motion and that the shoes were so adjusted or could be so adjusted that they could be tightened by an adjustable nut to take up lost motion from wear and shrinkage. These shoes were two at the top of the car and two underneath at the bottom. In the ordinary course of the use of such an elevator, it would take two years for any considerable shrinkage to occur. The space between the guides and the shoes, when the car was in motion, was not more than necessary to give it play. These shoes were put on and

adjusted some four months before the accident, and the whole testi-mony is to the effect that the elevator was then perfectly safe for use. The elevator was inspected in August, two months before the accident, and was then safe for use. There is nothing in the whole testimony to show that after August anything happened to that elevator or car which would attract the attention of the defendants or of the defendants' servants to any change in the condition of the elevator that would render it unsafe in any particular.

The plaintiff's case failed in that the proof did not establish that there was any remissness or neglect on the part of the defendants in maintaining and keeping in safe condition this apparatus for the use of their employees. On the point of defects in construction, or the use of machinery unsafe in and of itself, the evidence was not in such condition as to authorize a finding adverse to the defendants.

On all the testimony, we think the verdict cannot be sustained and that a new trial must be ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., O'BRIEN and INGRAHAM, JJ., concurred; McLAUGHLIN, J., concurred in result.

Judgment and order reversed, new trial ordered, costs to appel-lant to abide event.