(35 App. Div. 561.)

## BIDDESCOMB v. CAMERON et al.

(Supreme Court, Appellate Division, First Department.    December 30, 1898.)

MASTER AND SERVANT—APPLIANCES—NEGLIGENCE.

    Employers are not insurers of the safety of appliances furnished by them, but they are bound to exercise only reasonable care to supply safe appliances.

    Barrett, J., dissenting.

Appeal from trial term, New York county.

Action by Alice M. Biddescomb, as administratrix of the estate of William Biddescomb, deceased, against Alpin J. Cameron and another. There was a judgment for defendants, and plaintiff appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

J. B. Leavitt, for appellant.

H. G. Ward, for respondents.

VAN BRUNT, P. J.    This action was brought by the administratrix of William Biddescomb, deceased, to recover damages suffered by reason of the death of said Biddescomb, caused by the falling of an elevator which was operated in the defendants' factory at 130th street and the Boulevard.    It appeared from the evidence that the elevator was in a mill leased by the defendants for 2½ years from the 10th of April, 1895; that the deceased, on the 15th of February, 1897, having loaded a bale of wool on the elevator at the basement, ascended with it to the third floor, and then unloaded the bale, taking it to a room on that floor.    While the deceased was gone from the elevator, the cable which supported the elevator car unwound from the drum, which was situated in an adjoining shaft.    When he came back he stepped into the elevator, and the car fell to the cellar, and from the injuries occasioned by the fall he died.    It appears from the evidence that the elevator in question was one in common use, and that the appliance for stopping it in case of a breakage of the cable, or in the event of its becoming slack, was the ordinary appliance used for such purposes. It further appeared that the elevator was operated by an iron bar or pipe running from the basement to the roof, which was pulled up or down as the operator desired to go up or down, and that the car was stopped by the centering of a clutch.    If the bar was pulled too far up, the cable unwound upon the drum, and the car descended; if pulled too far down, the cable wound up on the drum, and the car ascended.    As above stated, the drum in question was situated in an adjoining shaft, and the cable from the drum passed over two pulleys to the kingbolt, which was at the top of the car.    The safety clutch was prevented from operating by the pulling of the cable upon the kingbolt.    When such tension was relieved by the breaking of the cable, or by its becoming slack, the clutch was supposed to operate, and to prevent the falling of the car.    On the occasion in question the deceased, upon stopping the car, must have pulled the rod too far, so that he reversed the action of the drum, and the cable unwound from the drum, and hung down in the shaft in which the drum was situated.

The car, for some reason,—probably because it was jammed,—did not descend as it should have done under those circumstances, but stuck fast until the deceased stepped into it, when the jar seems to have released it, and it started to fall; pulling the slack of the cable over the pulleys, and going down to the cellar. The cable was not broken.

The question presented upon this appeal is whether the defendants provided a reasonably safe appliance for the use of the deceased. The evidence shows that the elevator was of a construction in common use, and the safety appliances were such as ordinarily obtained in such structures. The defendants were not the insurers of the safety of the appliances provided by them, but they were bound to use reasonable diligence in providing safe appliances for the use of their employés. From the evidence it would seem that the clutch in question ought to have operated under the circumstances presented here. If, however, the defendants used reasonable care in seeing that these appliances were in order, the fact that they did not operate under circumstances in which they might naturally have been supposed to do so does not make them liable for the injuries sustained. There is evidence, it is true, upon the part of some of the witnesses who were examined on behalf of the defendants, to the effect that, with the slack of the cable in the adjoining shaft, the clutch could not be expected to work, because of the tension which the weight of the cable hanging in the adjoining shaft exerted upon the kingbolt of the elevator. It may be that there was a disputed question of fact in this regard, which could only be resolved by the jury, if the defendants claimed exemption from liability upon this ground only.

It appears that from October, 1896, to the latter part of January, 1897, the mill was shut down, and that before it was started up in January the elevator was carefully overhauled by one of the defendants, and by their engineer, and the clutch examined, oiled, and tried by dropping the elevator, and found to be in good order. It is urged upon the part of the appellant that the machinist was not a proper person to conduct such an examination, and that he could not judge as to whether the clutch was in good order or not. The evidence upon the part of the plaintiff, however, shows that the clutch was not an intricate piece of machinery, by any means, and that an ordinary inspection by a competent man would enable him to discover whether it was in working order; and there is no evidence but that Gill, the machinist, was qualified as such. Indeed, the evidence of the trial of the elevator, and that the safety clutch was found to act, was the best kind of inspection that could possibly have been made. The criticism that this trial took place 10 feet from the bottom of the shaft, and, therefore, presented no evidence that the clutch would work at the top of the shaft, hardly needs comment, in view of the evidence as to what causes the clutch to operate. Upon a consideration of the evidence, therefore, it would appear that the defendants had performed their full duty in respect to this clutch, and had used reasonable care in providing a safe appliance for their employés. The theory of the plaintiff, as stated by counsel, seems to be that a master must see that the place where his servant works, or the appliance with which his servant is provided, or the machine he operates, is safe. We are

not aware of any such rule which makes the master an absolute insurer of the safety of the appliance, and of the place where his servant works. As has already been stated, he is bound to use reasonable care in this regard, and that is all that the law requires.

None of the exceptions to the admission and rejection of evidence seems to be of sufficient gravity to call for special comment.

The judgment appealed from should be affirmed, with costs. All concur, except BARRETT, J., dissenting.

BARRETT, J. (dissenting). The cable by which the car was raised and lowered was connected with a kingbolt, which was fastened to a lever. When the cable exerted its usual strain, one end of the lever was elevated. If, however, the cable broke, or for any other reason became slack, a weight, called a "counterpoise," acted upon, and elevated, the other end of the lever; and this action resulted in placing pieces of metal, called "eccentrics," under the corners of the car, and stopping its fall. It is practically conceded (and at least the jury might have found) that this accident occurred because the counterpoise failed to overcome the resistance of the slack cable above the car, and raise the other end of the lever so as to bring the eccentrics into play. A little consideration will show that, should the car become jammed near the top of the hatch, the slack would accumulate near the drum, and outside of the hatch, while, should the jamming occur near the bottom, the slack would accumulate inside the hatch, right above the car. Doubtless, in the former case the counterpoise would have to overcome a greater resistance than in the latter. This case was of the former kind, and it is contended that the clutch was not there designed to work. The presiding justice, however, intimates that it was at least a question for the jury whether the defendants were not bound to provide a clutch which would act in any case where the cable should become slack; that is, whether the slack should accumulate inside or outside the hatch. This is manifestly correct. It would be strange, indeed, to hold that the defendants were under a liability to provide a clutch which would work in case of an accident near the bottom of the hatch, where the injury might be slight, but that, where the car should get jammed near the top, and death would quite certainly result from the fall, they were under no such liability. This point being established, it seems to me quite clear that the judgment should be reversed. The defendants do not contend that the clutch was designed to act in the case of an accident like the present, and that, so far as they knew, or had reason to know, it was in good working order to protect against such an accident. On the contrary, they distinctly contend that they were under no liability to furnish a clutch which would work in an accident like the present, and they offer the evidence of an employé of the manufacturer, and others, to show that this particular clutch was not designed to act in such a case. Under such circumstances, the facts as to the inspection seem immaterial. There was a radical defect in the clutch itself, which no inspection could remedy. The evidence shows merely that the clutch was, to a certain extent, overhauled and repaired; and that when the car was lifted a few feet from the ground, and dropped, the clutch worked.

But, if the counterpoise was not designed to work when the slack accumulated outside the shaft, repairing was of no use; and the test was applied only at the bottom of the shaft, when the slack would be inside of it. In short, the defendants simply made a test in conformity with their present erroneous theory as to what the clutch should be required to do, and found that test satisfactory. I think the judgment should be reversed, and a new trial ordered.