## GRIFHAHN v. KREIZER.

(Supreme Court, Appellate Division, Second Department. June 7, 1901.)

1. NEGLIGENCE—FREIGHT ELEVATOR—CONSTRUCTION.

Where a freight elevator was so constructed that it would not come to the level of the top floor of the building in which it was located, so that loading freight at that floor caused jarring, the jury was justified in finding that a disarrangement of the mechanism which resulted in an accident was caused by the defective construction of the elevator, so as to make the owner of the building liable for negligence.

**2. SAME—PRESUMPTION.**
    Where there was proof from which the jury might have found that
    a freight elevator was not properly constructed, no presumption that the
    owner was free from negligence could arise from the fact that it had
    been operated for some time without accident.

**3. PLEADING—EVIDENCE—AMENDMENT.**
    Where material evidence, which was not within the pleadings, has
    been admitted without objection at the trial, the court, on appeal, may
    treat the pleadings as if amended to conform to the evidence.
    Sewell, J., dissenting.

Appeal from trial term.

Action by Mary C. Grifhahn, as administratrix of the estate of
Ernest Louis Grifhahn, deceased, against Bernard Kreizer. From
a judgment in favor of the plaintiff, and from an order denying
a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

C. F. Brown, for appellant.
Benjamin Estes, for respondent.

JENKS, J. The action is for negligence, brought against the
lessee of a business building, who subleased to various tenants, and
who furnished and maintained a freight elevator therein for their
common use. The deceased, an expressman, being engaged upon the
premises in the lawful business of a tenant, was there upon the im·
plied invitation of the defendant, who owed to him the duty of exer·
cising reasonable care in seeing that the premises, including this
elevator, were safe. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925.
This tenant occupied the sixth or top floor of the building, and the
elevator was at rest opposite his rooms, 15 inches below the level of
the floor; for the construction of the elevator did not permit it to
be brought to a level therewith. The deceased was compelled to step
into the car of the elevator in order to place and to arrange the
tenant's boxes upon it. He had placed thereon six boxes, weighing
in all about 400 pounds, which was much less than the weight
power of the elevator. As he stepped into the car to place the
seventh box thereon, the elevator fell to the ground, carrying him
down to his death. The construction consisted of a horizontal shaft,
carrying a large wheel, worked by a rope, and furnishing the motive
power. The same shaft also carried a small pinion wheel, whose
teeth meshed with those of a larger wheel, carried on a second or
drum shaft. The drum shaft carried two drums. The rope of one
held the elevator car, and the rope of the other held the weight,
which played up and down a slot, and served as a counterbalance.
The car was controlled by a brake of a rope and a weight sufficient
to arrest its progress. The only witness of the accident was Parcell,
a servant of the tenant, who at the time was helping the deceased.
He testified that as soon as he saw the elevator move he jumped to
the check rope, which he found in perfect condition, and fastened.
He then looked at the wheels, and found that the pinion wheel, which
is on the drum shaft, had slipped from its bearing. The pinion wheel
was held fast to its shaft by a key, which is a small iron pin, fitting

into a groove of the shaft. The trial was largely a battle of experts, but there is testimony of facts to support the theory advanced by the plaintiff that the accident was due to the falling out or displacement of the key. There is no dispute that, if the pinion wheel ceased to control its engaging wheel, the elevator would fall. There is no dispute that if the key fell out the pinion wheel would cease to offer resistance, and the weight upon the elevator car must cause it to descend. The facts adduced by the plaintiff were that the car was at rest, but necessarily at 15 inches below the floor; that theretofore boxes of machinery had been placed down upon it; that the load was less than the weight power of the car; that it was necessary for the deceased to go upon the car in order to load it; that the deceased stepped upon it; that the car fell; that the check line was secure; that the wheels were at the time seen to be out of gear; and that the key was subsequently found on the sixth floor, uninjured. Further testimony for the plaintiff is that the wheels could not have been out of gear unless the key was out; that the key could not have been out before the accident; that the jar of the boxes of machinery put down upon a car 15 inches below the floor was a cause for the shifting of the gear, provided the key was inadequate, or for the falling out of the key, provided it was inadequate. I think that this presented, as questions for the jury, whether the accident was due to the displacement of the key of the pinion wheel, and whether such displacement was due to the defective construction of the elevator.

The next question is whether the jury could find the defendant culpable. The test is whether the defendant was reasonably careful and prudent in furnishing an elevator adequate and proper for the use to which it was to be applied. Montgomery v. Bloomingdale, 34 App. Div. 375, 54 N. Y. Supp. 329, and authorities cited. One of the plaintiff's experts testified that the key was not properly mechanically put in, because it was lacking about three-eighths of an inch from coming through to the further end of the pinion; that the groove in which the key ran extended clear through the wheel, and a distance beyond, so that a key could be put through the pinion; and that if the key had been suitable and proper, and of the right length, and properly tightened, it would not have slipped out. Mr. Tripp, an expert, agreed with this view, and was thereupon asked this question:

"Q. In ordinary use, at the time of this accident and before that, were keys put in of this size and in this way, as this one was, or different ways? A. They are put in on the same principle, only they are generally put in the full length of the pinion. Q. That is, three-quarters of an inch longer? A. Yes, sir; the principle is the same."

Mr. Tismer, one of the defendant's experts, testified that a key one inch in length would be sufficient for the purpose for which it was used; but on cross-examination he testified:

"I mean to testify that a key one inch long, placed in that arm or axle to hold that wheel, going only one inch into the wheel, and lacking an inch and a half of going through, would be enough and be safe. I don't say that is the way they put them in. That is sufficient. They put them in the whole length, as a rule. There is no length prescribed for it. Nobody cares to follow any rule. * * * Just as many one way as the other."

The plaintiff's expert Brockbank testified that the usual way to secure the wheel would be to cut the key seat in, and then put the power wheel close enough to the pinion wheel so it could not slip, and that it was not done this way in this case. There is testimony from which the jury might have inferred that the construction of the elevator, in that it could not come level with the floor, was not proper, and that it might have been obviated either by reconstruction or by the building of a false floor upon the platform. The defendant's expert McCoy admitted that "this was a fault in construction," and that such construction was not safe. The plaintiff's expert Brockbank testified that such construction was neither mechanical nor proper, and it also appeared that some time before the accident the defendant's attention was called to this defect by the witness Parcell. It is true that the deceased could have seen as readily as the defendant that it was impossible at the time to bring the elevator car level with the floor. If this defect of construction caused the car to jar when freight was loaded thereon, and thereby the elevator was thrown out of gear or the key displaced, yet the mere fact that the deceased knew that the car and floor were not level, or that the jarring of the car resulted therefrom, is not enough to defeat the plaintiff's right of recovery on the theory of obvious defect. Davidson v. Cornell, 132 N. Y. 228, 235, 30 N. E. 573. In the language of Bradley, J.: "The knowledge of what appeared to him to be the situation may not necessarily have advised the plaintiff of the consequences which might result from it." See, too, Cook v. Railway Co., 34 Minn. 45, 24 N. W. 311.

The appellant insists that he has fulfilled the obligation cast upon him, first, within the rule that "where a machine, not obviously dangerous, has been in daily use for a long time, and has uniformly proved adequate, safe, and convenient, its use may be continued without the imputation of imprudence or carelessness"; taking the statement of the rule from the language of the opinion in Stringham v. Hilton, 111 N. Y. 188, 197, 18 N. E. 870, 1 L. R. A. 483. The appellant cites certain authorities. In Lafflin v. Railroad Co., 106 N. Y. 136, 138, 12 N. E. 599, 60 Am. Rep. 433, Earl, J., writes: "There is no complaint that the platform was out of repair or that it was improperly constructed." In Burke v. Witherbee, 98 N. Y. 562, there was no claim that the car, track, or cable was defective, and none of them broke. Earl, J., writes that there was no conflicting evidence in the case, and the sole question was whether the hook that slipped should have been secured by a bolt fastened with a key. The car was drawn by a cable hooked into a bail. The cable necessarily must have been shifted from one car to another. It was shown that the mode proposed of securing the hook would not answer where two cars were used; that the hook had been used in the mine for years and in other mines. It was held that this was sufficient care on the part of the master, and, further, that the servant was as capable to judge of the safety of the shifting appliance as the master. Devlin v. Smith, 89 N. Y. 470, 476, 42 Am. Rep. 311, states the rule that the duty of the employer to his servant is reasonable care, and, where injury results from implements furnished,

knowledge of the defect must be brought home, or proof made of the failure to exercise proper care to discern it. In Stringham v. Hilton, supra, the court say that they find no evidence that the machine was defective in construction. "If there was any defect, it must have been in its original construction. Against that supposition, the evidence is all one way." The machine was said to be "conclusively proven to be of a kind very commonly in use, constituting the ordinary, customary form of elevator." The whole apparatus was put in order under the direction of a competent manufacturer of many years' experience, who testified (and of that there is no contradiction) that he had hundreds of them similarly constructed. In Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522, a horse shied on a city street, and carried the plaintiff over an embankment; and the familiar rule of Dougan v. Transportation Co., 56 N. Y. 1, and Loftus v. Ferry Co., 84 N. Y. 455, 38 Am. Rep. 533, was applied, inasmuch as the street had been maintained for 10 years without accident thereon. Lane v. Town of Hancock, 142 N. Y. 510, 521, 37 N. E. 473, turns upon the same principle. In Boess v. Brewing Co., 12 App. Div. 366, 42 N. Y. Supp. 848, the defect was said to be "inherent and undiscoverable,"—a flaw in the shaft due to an improper amalgamation of the metal,—and the court said that, if the defendant had inspected it, he would not have discovered the flaw.

It is further contended that the defendant discharged his whole duty when he caused the elevator to be overhauled, repaired, and tested by competent mechanics in the month preceding the accident. Several cases are cited. Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537, did not involve the question of inspection. No proof was given of any defect in the plan or structure, or that it was not well constructed, of good materials, in accordance with plans generally followed in manufacturing similar apparatus. In Hart v. Naumburg, 123 N. Y. 641, 25 N. E. 385, the defendants furnished an elevator and equipments "of the most approved kind and pattern," and this, together with the careful testing and inspection of it by the defendants and by the inspector of the elevator company, was held sufficient. In Biddiscomb v. Cameron, 35 App. Div. 561, 55 N. Y. Supp. 127, the elevator was of a construction in common use, with the usual safety appliances, but the clutch failed to work. It was shown that shortly before the clutch had been examined, oiled, and tried by dropping the elevator. In Montgomery v. Bloomingdale, supra, the apparatus itself was sufficient and safe so far as its construction was concerned; and the court said that, on the point of defects of construction or the use of machinery unsafe in and of itself, the evidence did not permit a finding adverse to the defendant. But in the case at bar there was proof upon which the jury might find that there were defects in the construction of the elevator. There is no doubt that the defendant did cause the machine to be overhauled shortly before this accident, in consequence of an accident due to a broken cable, and that he gave instructions "to repair the cable, and to see that everything was O. K. and all right." Mulholland, the workman in charge, testified:

70 N.Y.S.—62

"Before this last accident, I had examined minutely and particularly that pin as a special object of examination,—that and all the rest, inasmuch as it was in its place where it belonged. All of it was concealed, with the exception of about half an inch. I didn't take it out and examine it; certainly not. I know about the condition of that pin inside,—the part that was not in view or exposed. * * * I sounded this key with a hammer,—the head of the key. That was the extent of the examination. * * * The striking would indicate whether it was large enough to fit the place it was in. I mean to say that by striking the hammer on the head of it I could tell whether it was tight or loose. The object of striking the key on the head was to tell whether it would move or not."

The construction of the key and its placement were open to outside inspection. This is clear from the testimony of the defendant's experts Mulholland and Tismer. "Reasonable inspection is necessary and required." Carlson v. Bridge Co., 132 N. Y. 273, 278, 30 N. E. 750. "There must be careful inspection or the application of appropriate tests." Probst v. Delamater, 100 N. Y. 266, 273, 3 N. E. 184. In Durkin v. Sharp, 88 N. Y. 225, the court refused to charge that if the jury believed the track had been inspected within a reasonable time prior to the accident, by a competent inspector of the defendant, and had by him been adjudged to be in a safe condition, the plaintiff cannot recover; and it was held that the exception to the refusal was not well taken, and to excuse him the track must have been carefully inspected by a competent inspector. In view of the testimony that the key used was improper for the purpose, not in that it was defective, but in that it was inadequate, whether the inspection was such as should have been made was, I think, a question of fact for the jury.

It is contended that the proof of defective construction is not within the pleadings. The criticism on the pleadings would seem to be just, but I fail to find that the point was adequately and sufficiently raised at the trial, either by objection to the testimony or to the drift taken by the case, or on the motion to dismiss, although, inter alia, the grounds raised were that the plaintiff had failed to establish a cause of action set out in the complaint. In any event, I think that the point taken is not fatal to the judgment (Conhocton Stone R. Co. v. Buffalo, N. Y. & E. R. R. Co., 3 Hun, 523; Pollard v. Railroad Co., 7 Bosw. 437; Frear v. Sweet, 118 N. Y. 454, 23 N. E. 910), and this court may treat the pleadings as if amended in conformity to the proof (Howell v. Railway Co., 92 Hun, 423, 36 N. Y. Supp. 544).

Certain exceptions are said to be well taken, in that opinionative evidence was inadmissible. The first and second objections relate to matters elicited on the direct examination. The question was answered before the third objection. The fourth exception was to a ruling to strike out, directed, it is true, by the court, to be made when objection was first taken; but I think that, if we consider this with all the force of a timely objection, the admission of the evidence was not error. Shaw v. Stone, 1 Cush. 228, 242. The fifth and sixth objections were both put upon another specific ground, not tenable, and the final objection was upon a different ground than that now urged. Beir v. Cooke, 37 Hun, 38; Ward v. Kilpatrick, 85 N. Y. 413, 417, 39 Am. Rep. 674. I think that it was not an abuse of discretion

to refuse the recall of Mulholland, for he had already testified at length, and had practically covered the ground traveled over by the witness against whom defendant proposed to array him.

The judgment and order must be affirmed, with costs. All concur, except SEWELL, J., dissenting.