HUBENER v. HEIDE.

(Supreme Court, Appellate Division, First Department. June 6, 1902.)

ELEVATORS—FALL—NEGLIGENCE—SUFFICIENCY OF PROOF.

Where plaintiff was injured by the falling of an elevator in defendant's building, in which plaintiff was employed, and it appeared that defendant had furnished a competent engineer, whose duty it was to inspect the elevator each morning; that the latter had inspected it the morning before the accident, and found it to be in good condition; that the operator was a competent person; that during the three years that the elevator was in use no accident had ever happened; and that it worked properly immediately after the accident without any repair; and it did not appear that there was any defect in the construction of the elevator, or that it was out of order, or that the operator or any other employé of defendant was in fault,—judgment for plaintiff was not sustained, even assuming that the maxim res ipsa loquitur applied.

O'Brien and Laughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action for personal injuries by Minnie Hubener, an infant, by Susan Hubener, her guardian ad litem, against Henry Heide. Judgment for plaintiff, and defendant appeals. Reversed.

See 70 N. Y. Supp. 1115.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

H. Snowden Marshall, for appellant.
Stephen C. Baldwin, for respondent.

INGRAHAM, J. The plaintiff was employed by one Gravenstein in a building belonging to the defendant in Vandam street, in the city of New York. The defendant, in his answer, admits that he was, and still is, the owner of the building in which the plaintiff was injured, and upon the trial admitted that as such owner he operated and controlled elevators in said building for the use of the plaintiff and the other occupants and lessees of the building. On behalf of the plaintiff it was proved that she was employed by Gravenstein, and had been working for him in this particular building for three years; that during this period, in the morning, when she went into the building, she walked to the third floor, where there was a dressing room; that, after leaving her cloak in the dressing room, she took the elevator to the eighth floor, where she was employed; that, after the elevator had ascended "a little way," it suddenly went down very rapidly, and never stopped until it struck the basement, and when the plaintiff attempted to get out of the elevator she found that her foot was injured; that it was over six weeks before she was able to use it to move about with; that at the time of the trial it was still very weak, and she could not walk without a rubber stocking; that there were three elevators in this building, two of which were freight elevators, and the other a passenger elevator; that the elevator that the plaintiff used had a sign on it "For Freight Only"; that this particular freight elevator was simply a platform, with no covering over the top, and not inclosed, moving up and down through the elevator shaft, and it had

never fallen before; that the elevators had been furnished by a manufacturer of good reputation for supplying first-class machinery. The plaintiff's counsel stated that they made no claim that the builders of this elevator were other than reputable builders. It also appeared that the elevator was built in May, 1897, and had worked from the time it was first installed to the time of the accident (May 4, 1900) without disclosing any imperfections; that the man in charge of the elevator had been employed for 15 or 20 years; that there had never been any complaint about him, and he had never been negligent or careless; that the defendant's superintendent and engineer examined this elevator immediately after the accident, and could find nothing wrong with it; that this elevator had also been installed under the direction of a competent civil engineer; that each of the three elevators in the building had a separate engine and a separate elevator man and an engineer and his assistants to operate the engine; that this operator had operated elevators for 8 or 10 years prior to the accident. It was admitted that "the elevator in question did, on the occasion in question, slip down to the bottom, and was beyond the control of the elevator man, and struck the bottom with a jolt." On behalf of the defendant the elevator man testified that on the morning in question the elevator stopped at the third floor to take the girls to their different departments; that, as he started to go up, the elevator suddenly went down, and the witness tried to grab the brake, but the brake would not hold, and he held on to the rope until he got to the basement; that this brake was worked by a rope other than the one that controlled the ordinary movement of the elevator; that the elevator did not stop when the witness pulled on this brake until it got to the basement; that he never had an accident like this before; that he cleaned and oiled this elevator on the morning of the accident, going over the different parts of it, and did not see anything wrong; that the capacity of this elevator was 4,500 pounds, and it did not appear that the elevator was overloaded. The engineer employed by the defendant testified that he had charge of the elevator and the machinery that ran it; that before the accident he inspected the starting cables, motion cables, all parts,—brakes, adjusting rods, and everything; that the elevator, machinery, and appliances about it were in good order at the time, and nothing was the matter with it; that this elevator and the machinery had been running for three years without accident; that the elevator commenced to run at 7 o'clock in the morning of the day in question, as usual, and the accident happened about half past 7; that immediately after the accident he inspected the elevator, and found the safety device intended to prevent the elevator from striking the floor was broken; that this safety device was at the bottom near the shaft, and could not have had anything to do with the starting of the elevator; that it was broken as the elevator came down and struck it, and had not been broken before the elevator came down; that immediately after the accident the witness started the elevator running again, and it ran the same as before; that he made no repairs to it, except that he took off the broken piece of the safety device at

the bottom of the elevator shaft; that the elevator was in order; that the ropes were all in order before and after the accident; that the safety device had nothing to do with the injury to the plaintiff, its use being to stop the elevator when it got to the ground floor automatically, and not to prevent an accident of this character. This was substantially the testimony as to the nature of the accident.

Assuming that the principle established by the case of Griffen v. Manice, 47 App. Div. 70, 62 N. Y. Supp. 364, and 166 N. Y. 188, 59 N. E. 925, is applicable, and that proof of the happening of this accident was sufficient to call upon the defendant to show that the accident was not due to any want of care upon his part, the question to be determined is whether the defendant has met that obligation. This evidence undoubtedly justified a finding that the defendant had maintained this elevator and had authorized its use by the employés in the building. The defendant, therefore, was required to use reasonable care in the maintenance and operation of the elevator. The measure of his duty was reasonable prudence and care. Griffen v. Manice, 166 N. Y. 192, 59 N. E. 926. The reason for the application of the principle res ipsa loquitur to a case of this kind is stated by Judge Cullen in that case as follows:

"The maxim is also in part based on the consideration that, where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present."

See, also, Breen v. Railroad Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450. In the latter case it is said:

"There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on his part."

The nature of the accident being such as to call upon the defendant for an explanation as to the cause of the accident and to show that it was caused without negligence on his part, the question is presented as to whether or not, upon the whole evidence, does it appear that the accident happened without fault of the defendant? In Hart v. Naumburg, 123 N. Y. 641, 25 N. E. 385, the facts presented were much like the facts in this case. There was a freight elevator upon which the plaintiff had ridden for several years with the express permission of the defendant. The evidence showed that this elevator was looked after by the defendant, who rode upon it frequently for the purpose of inspection, and that for three months it was inspected by one of the inspectors of the manufacturer employed for that purpose. There was no proof that any defect in the elevator or its equipment was ever brought to the notice of the defendant prior to the accident, or that he was aware that it was in any respect out of order; that at the time of the accident the elevator gave way, or tipped to one side, letting the plaintiff fall to the bottom of the well hole, severely injuring him; that when the elevator was started up the chains which controlled it, being somewhat out of place, would

wind irregularly around the drum, and when the elevator was moving this irregular winding of the chains caused them, or one of them, to slip over into the shaft, tipping up the side of the elevator, and causing the accident. But this condition was not proved to have been known to the defendant. The court held that, as the defendant had furnished an elevator and equipments of the most improved kind, and it was carefully looked after and inspected by the defendant, and also by the inspector of the manufacturer who furnished it, this was all that was exacted from the defendant, and the defendant was not guilty of negligence. In Biddiscomb v. Cameron, 35 App. Div. 561, 55 N. Y. Supp. 127, affirmed in 161 N. Y. 637, 57 N. E. 1104, the same question was presented. There the complaint was dismissed, and this was affirmed, as upon the whole evidence it appeared that the defendant had performed his full duty in providing a safe appliance for their employés. In Montgomery v. Bloomingdale, 34 App. Div. 375, 54 N. Y. Supp. 329, the question is fully discussed by Mr. Justice Patterson.

Applying the principle established in these cases to the case at bar, I do not see how it can be said that there was any evidence to justify a finding of the jury that this defendant was negligent. He provided for the use of the persons in the building a passenger elevator and two freight elevators, which were furnished by manufacturers of good reputation. He also furnished a competent engineer, whose business it was to inspect these elevators and the machinery operating them each morning, and who performed that duty on the morning before the accident; the elevator then being found to be in good order, and in proper condition for use. He also furnished a competent person to take charge of the elevator, and who was at his post operating the elevator in the usual manner. During the three years that the elevator was in use no accident had happened, and there was no indication of any fault in the original construction of the elevator, or that it was in any way out of order, or not safe for the use to which it was put. From some unexplained reason the elevator on the morning in question fell. What caused it to fall does not appear. There is no evidence that the operator of the elevator was at fault; no evidence that any other employé of the defendant was at fault; no evidence that the elevator itself was out of order; nothing to charge the defendant with any negligence, except the mere fact that the elevator did slip on this particular occasion, the evidence being uncontradicted that before and after the accident the elevator worked properly, and nothing wrong with it was discovered. There is nothing in this record to justify the finding that the defendant omitted any precaution that it was possible for the most prudent man to take to insure the safety of those using this elevator. He purchased it from a reputable manufacturer. He caused it to be constantly inspected by a competent engineer. He supplied competent employés to manage it, and the cause of this one slip is unexplained. The defendant was not an insurer, and was not responsible to one using this elevator, provided he did what a prudent person could do to make it safe for those who used it; and there is no suggestion in this record of his failing to do anything that the most prudent person could do. Assuming that

this is a case which justified the application of the maxim res ipsa loquitur, the plaintiff is bound to prove that the defendant was negligent; and while, applying that maxim, the happening of the accident is sufficient to call upon the defendant to show that the accident happened notwithstanding the exercise by him of the care and prudence that the law requires of a person maintaining an elevator of this character, and, unexplained, would justify a finding of negligence, when from the whole evidence, which is entirely uncontradicted, it appears that he did perform that obligation, and did all that a prudent person could do to provide a safe elevator for the use of those who had the right to use it, there is no basis upon which he can be held responsible for the accident.

I think that the motion at the close of the testimony to dismiss the complaint should have been granted, and that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON and McLAUGHLIN, JJ., concur. O'BRIEN and LAUGHLIN, JJ., dissent.