### JAMES T. MAYNARD & another *vs.* JOHN W. BUCK.

On a trial of the question whether a drover for hire whose drove was frightened and dispersed by a railroad train exercised ordinary care in continuing to the end of his route before returning to seek for cattle missing from that cause, evidence is admissible of what would have been the expense of feeding the rest of the drove during the delay that would have been necessary or probable had he stopped to search for the missing cattle; and also of the usual practice of drovers under like circumstances, when engaged on routes of no greater length from the same point.

The degree of care which the law requires a bailee for hire to exercise over the property which is the subject of the bailment is not less than that which men usually exercise over their own property under the same circumstances.

On a trial of the issue whether a drover for hire was liable on the ground of negligence for the loss of cattle from his drove, *Held,* that evidence was admissible of the usual practice of drovers under like circumstances; but not of drovers for hire alone, as distinguished from and to the exclusion of owners driving their own cattle. *Held, also,* that the practice, however uniform, of others under like circumstances, did not constitute a rule of conduct by which the jury were to be controlled in their verdict; and that the defendant had no ground of exception to a refusal of the judge to rule that he was not liable if he did the things which drovers of common prudence engaged in the same business do ordinarily. *Held, also,* that the price he received for driving the missing cattle was inadmissible in evidence as affecting the measure of care he was bound to exercise for their security or recovery. *Held, further,* that, if the judge instructed the jury that the defendant was bound to use the same care in regard to the cattle which men of ordinary prudence would exercise over their own property under the same circumstances, and would be liable if he failed to use such care and if by reason of such neglect the cattle were lost, the defendant had no ground of exception because he declined to instruct them more particularly that, if they should find that the defendant was negligent in any particular, they must, in order to hold him liable, find that that particular negligence was the cause of the loss; or because he instructed them that it would be proper for them to follow the defendant, in the testimony, from the time the cattle were put into his possession, in order to ascertain whether at any point of time to which their attention had been called he was guilty of any negligence.

CONTRACT for the value of a pair of steers alleged to have been lost through the defendant's negligence. At the trial in the superior court, before *Rockwell,* J., the jury found for the plaintiffs; and the judge allowed a bill of exceptions of which the following is the material part:

"It appeared that the defendant was a drover engaged in driving cattle from Brighton to various points between that place and Worcester; that on November 9, 1865, the plaintiffs by their agents intrusted to him a pair of steers to drive from Brighton to Northborough for a stipulated price; that he received the same, marked them by cutting in the hair the letter H, and left Brighton, according to his custom, on the afternoon of that day, with a drove of one hundred and twenty-three cattle. The evidence left it uncertain whether the steers were in the drove or had been stolen from the defendant's yard at Brighton before he started. The defendant offered evidence, not controlled by the plaintiffs' evidence, tending to show that, at about dusk of said day, as he was proceeding with his drove, assisted by two men and a boy, when he had reached a point near the Boston and Worcester Railroad in Newtonville a passing train of cars frightened and stampeded the drove into the adjoining

fields; that, as soon as he could, with the aid of his men, he got the drove back in the road and proceeded to the place where he stopped with it for the night; and that upon counting the drove it was found that nine cattle were missing. The defendant testified that the next morning he proceeded with his drove towards his destination; that he had cattle to deliver at various points, as far as Worcester, at which last place he arrived with the remainder of the drove on Friday evening, November 11; and that early the following morning he returned to seek the lost cattle, found seven of them, but was unable to find the steers in question.

" Upon the question of ordinary diligence, the defendant offered to prove a custom among drovers engaged in driving cattle for hire over this route and other routes from Brighton to points forty or fifty miles out, whenever it happens that one or a small number of cattle stray from a drove and cannot be immediately found, to drive on with the drove to their destination, and then return and seek for such stray cattle. The plaintiffs objected to this evidence; and the judge excluded it. Upon the same question, the defendant also offered to prove what it would cost to feed a drove of cattle of the size of the defendant's said drove; but, on the plaintiffs' objection, the judge excluded the evidence.

" The defendant asked the judge to instruct the jury that, ' in the law of bailments, the measure of ordinary diligence in any particular case is such diligence as men of common prudence ordinarily use, as a matter of fact, engaged in and about the same employment.' The judge declined to give this instruction in that form, but instructed them that ' the defendant was under obligation to take the same care of the cattle as prudent men ordinarily take of their own cattle under the same circumstances.' ".

*F. P. Goulding*, (*F. H. Dewey* with him,) for the defendant.

*G. F. Hoar* for the plaintiffs.

WELLS, J. One question at the trial was, whether the defendant was guilty of a want of ordinary care, in not returning at once to seek the lost cattle, upon discovering that they were

missing, instead of proceeding with his drove to its destination. This must be determined with regard to all the circumstances of the case. Among those circumstances are, the difficulty of pursuing a search while the drove in his charge was in mid-route ; and the expense of maintaining the drove during the necessary or probable delay. The usual practice, or mode of proceeding ordinarily adopted by drovers under like circumstances, when engaged upon routes of no greater length, from the same point, would have some bearing upon the question of what is ordinary care. It is involved in the comparison indicated by the term " ordinary."

The court are of opinion that the testimony offered by the defendant upon this point was competent, not to prove a custom, in the strict sense of that term, but to show the course of proceeding ordinarily pursued, as bearing upon the question of what is ordinary care. *Cass* v. *Boston & Lowell Railroad Co.* 14 Allen, 448. The evidence so offered was applicable to a case when the straying cattle " cannot be immediately found ; " and it is not expressly stated that any effort to find them immediately was made. But the ruling was apparently given upon general grounds, and not upon any deficiency in the defendant's other evidence which rendered inapplicable that which was offered and refused. For the exclusion of the testimony so offered, the                    *Exceptions are sustained.*

Upon a new trial, before *Reed*, J., there was evidence substantially as at the former trial concerning the receipt of the cattle on the morning of Wednesday, November 9, by the defendant at Brighton; and it appeared that when he received them he entered a memorandum of the receipt in a book in which he made similar record of all the cattle which were to compose his drove, and placed them, unwatched, in the furthest of three yards in which the drove was contained ; that in the afternoon, half an hour before he was to start, he sent a person to count the number of cattle in that yard, who reported that there were thirteen, which was the number he had placed there; that when he started he first turned the cattle out of the other yards, and

as they passed the third yard he let out the cattle which were in it, and when doing só saw that there were a pair of gray steers among them which did not belong to his drove, and accordingly turned them into an adjoining yard, but did not count the rest; that the drove consisted of one hundred and twenty-three cattle, and he had two men and a boy to assist him in driving; that he had reached Newtonville about half past five o'clock, when the stampede was caused by the railroad train; that he gathered the drove again, and went on as far as Newton Lower Falls, where he stopped for the night; that he counted the drove in the morning, and found nine cattle missing, and then proceeded to Worcester, where he arrived on Friday evening, November 11, but did nothing towards the recovery of the missing cattle from the time of discovering their loss until Saturday, November 12, when he returned to Brighton and made some search for them, the nature and extent of which he related as a witness. "There was also evidence tending to show that the usual practice or ordinary mode of proceeding of drovers, driving on routes from Brighton forty or fifty miles therefrom, when one or a small number of cattle stray from the drove and cannot be immediately found, was to deliver the rest of the drove before returning to seek for the lost cattle. The witnesses testified in cross-examination that it was the practice to return or send for the lost cattle as soon as consistent with the safety of the rest of the drove. It appeared that the defendant dismissed the boy who assisted him, the first night, and supposed that he returned to Brighton ; and that he dismissed one other of his assistants at Framingham some time the following day.

"The plaintiffs contended that the defendant was negligent in leaving his yard unwatched; in not having more persons with a drove of the size and character of his; in approaching the railroad at the time when he approached it; in not taking pains, when he found the gray cattle in his yard, to see whether the others were all there when he started ; in not counting them on the road or on reaching his destination after the stampede; and in not sending back word and causing the cattle to be advertised and searched for as soon as the loss was discovered."

The defendant asked for the following instructions to the jury: "1. The defendant was bound to exercise the same degree of care and diligence that men of common prudence engaged in driving cattle for hire over this and similar routes ordinarily exercise with regard to the property intrusted to them. 2. Upon the question whether it was ordinary diligence for the defendant, when cattle were accidentally separated from his drove and were not immediately found, to drive on with his drove to his destination, and then return and seek for the cattle, the jury must inquire what is the usual practice or mode of proceeding ordinarily adopted by drovers under like circumstances, when engaged upon routes of no greater length than this, and from the same point. If that practice or mode of proceeding is similar to that the defendant adopted, then they must find that the defendant bestowed ordinary diligence in that particular. 3. So upon the question whether the defendant ought to have done anything further or different from what he did at Brighton after these cattle were delivered to him and before he started, the jury must inquire whether he did what drovers of common prudence ordinarily do under the like circumstances. If he did do the things that drovers of common prudence engaged in the same business ordinarily do, he was not guilty of such negligence in that particular as will make him liable in this action. 4. Upon the question of what was ordinary diligence in this case, the ordinary course of the defendant's business, the price he received, and all the circumstances of the case are to be taken into account; because the defendant was not obliged to make any outlay disproportionate to the compensation he received, to recover cattle that had strayed from the drove without his negligence. 5. If the jury find that the defendant was negligent in any particular, they must also find that that particular negligence was the cause of the loss, before they can charge the defendant for such negligence in this action."

The judge declined to give these instructions, but among other things instructed the jury "that, if the cattle in question were put into the defendant's hands, and he agreed to drive them for hire to Worcester, he was bound to use the same care in regard

to them that men of ordinary prudence would exercise over their own property under the same circumstances; that if he failed to exercise such care, and if by reason of such neglect the cattle were lost, the defendant would be liable;" and further said to the jury upon this point, "that the defendant was not an insurer; that his liability was not like that of a common carrier, (which was to some extent explained to the jury,) but that he was only liable for the results of his want of ordinary care, — for his negligence."

"There was evidence in the case tending to show that the cattle in question were lost from the yard of the defendant in Brighton, and that the defendant at the time of starting with his drove might, with ordinary care, have known this. It was contended upon the evidence, by the plaintiffs, that this was so, and that the defendant did not then exercise ordinary care to ascertain whether they were so lost, and to find them if they were then lost. The judge instructed the jury that it would be a proper course for them to pursue in this investigation, to follow the defendant, in the testimony, from the time the cattle were put into his possession up to the time of his return from his home in search for the cattle, and through the search which he made, in order to ascertain whether at any point of time to which their attention had been called, he had been guilty of any negligence; and spoke of the different points at which it was contended that the defendant had been so guilty; and said to the jury that, in considering the question whether he had been guilty of negligence, they must remember and give due weight to the testimony of drovers and others who had been examined upon the usual mode of procedure and the practice of drovers under like circumstances.

"The judge further instructed the jury, the plaintiffs assenting, that the burden was on the plaintiffs to show negligence and not upon the defendant to show diligence."

The jury again found for the plaintiffs; and the defendant alleged exceptions, which were argued at October term 1869.

*H. B. Staples & F. P. Goulding*, for the defendant.

*G. F. Hoar*, for the plaintiffs.

WELLS, J.   The instruction that the defendant " was bound to use the same care in regard to" the cattle, which he undertook to drive for hire, " that men of ordinary prudence would exercise over their own property under the same circumstances," was correct, and in accordance with numerous authorities. *Cayzer* v. *Taylor,* 10 Gray, 274. *Shaw* v. *Boston & Worcester Railroad Co.* 8 Gray, 45. *Shrewsbury* v. *Smith,* 12 Cush. 177. *Sullivan* v. *Scripture,* 3 Allen, 564. *Giblin* v. *McMullen,* Law Rep. 2 P. C. 317.   The degree of care to be required of one who is intrusted with the property of another for reward is not less than that which is to be expected of one who deals with his own property.   If the first instruction asked for is based upon a recognition of such an obligation, it is only equivalent to that which was given by the court.   But if the comparison with those " engaged in driving cattle for hire " was intended to indicate that one who drives for hire is bound to a less degree of care " because he is an hireling and careth not " for his charge, it asked for a rule which has never been recognized either as good law or good morals.   The evidence as to the usual practice or mode of proceeding ordinarily adopted by drovers was held at the previous hearing to be admissible upon the question of ordinary care, because it tended to show what had been found, by the experience of others, to be most judicious or expedient in like emergencies ; not because they were drovers for hire as distinguished from owners driving their own cattle.

The defendant further insisted that the jury should be instructed that, " if he did do the things that drovers of common prudence, engaged in the same business, ordinarily do, he was not guilty of such negligence as will make him liable in this action."   But this is not the legitimate application of evidence admitted to show the usual practice in similar cases.   The usual practice is made up of particular instances of conduct, by the limited number of individuals similarly engaged, within the knowledge of the witnesses who may be called to testify.   That which is admissible in evidence is, not the particulars, but what the witnesses state from their knowledge of those particulars to be usual, or the course ordinarily pursued.   The charac-

ter for prudence, of those whose conduct or acts go to make up this usual practice, is not required to be shown. It forms no part of the inquiry. The effect and purpose of the evidence is to aid the jury in forming their judgment of what the party was bound to do, or was justified in doing, under all the circumstances of the case. What had been done by others previously, however uniform in mode it may be shown to have been, does not make a rule of conduct by which the jury are to be limited and governed. It is not to control the judgment of the jury, if they see that in the case under consideration it is not such conduct as a prudent man would adopt in his own affairs, or not such as a due regard to the obligations of those employed in the affairs of others would require them to adopt. It is evidence of what is proper and reasonable to be done, from which, together with all the other facts and circumstances of the case, the jury are to determine whether the conduct in question in the case before them was proper and justifiable. We think the instruction asked for, in this particular, was not such as should have been given.

The instruction asked for, to the effect that "the defendant was not obliged to make any outlay disproportionate to the compensation he received, to recover cattle that had strayed from the drove without his negligence," and therefore that the price he received was "to be taken into account" upon the question of due diligence, was inadmissible. The price is undoubtedly graduated by the well known risks of the business, and accepted in view of those risks. The obligation to seek the recovery of straying cattle does not rest upon the ground that that special service is paid for in the consideration of the original contract to which it is incident. It arises because it is incident to the principal contract, and, as such, is covered by its consideration. When an emergency occurs to bring that obligation into operation and make it onerous, he is not justified in any lack of faithful performance because in that particular event his compensation has proved inadequate to the burden.

The fifth instruction requested is correct, and unobjectionable, if taken to mean only that the jury must find both neglect and

that the loss occurred by reason of such neglect. But that instruction was, in effect, given. To have given it in the form asked was unnecessary; and might mislead, by seeming to require the jury to determine, with too much precision, to which particular act or omission the loss should be attributed, when they might think there were several which coöperated to produce the result.

The instruction given as to examining all the defendant's conduct in relation to the cattle, " in order to ascertain whether at any point of time to which their attention had been called he had been guilty of any negligence," could not have been understood to authorize the jury to render a verdict against the defendant on account of any such negligence, unless they also found that the loss was occasioned thereby, as he had already instructed them.

Upon the whole case the court are of opinion that there is no sufficient ground shown for setting aside the verdict.

*Exceptions overruled.*