MARGARET LEARY, as Administratrix, etc., of JOHN W. LEARY, Deceased, Plaintiff, *v.* THE LEHIGH VALLEY RAILROAD COMPANY, Defendant.

*Master and servant — duty of an employer to furnish proper implements — negligence of a co-servant — evidence of negligence.*

An employer is required to use reasonable care in furnishing his employees with suitable implements, apparatus and machinery for the service in which they are engaged, but it is not necessary that the employer supply the very best means which can be devised.

The requirement is satisfied if the employees are provided with appliances which are reasonably safe, in good condition, and adequate to the purpose in view, and the fact that the use thereof becomes unsafe by the want of due care on the part of the employees does not charge the master with injurious consequences occasioned to them from such use.

It is sufficient if the apparatus is in a good condition of repair, and is such as is ordinarily or generally in use for the purpose.

A person entering the employment of another assumes the hazard arising from the negligence of his co-employees.

Upon the trial of an action brought against a railroad company to recover damages resulting from the death of the plaintiff's intestate because of injuries received by the explosion of the boiler of one of its locomotives, it was shown that on the boiler of the locomotive there were two injectors located for the purpose of taking water when required from the tank into the boiler. Upon the boiler were gauge cocks accessible to the engineer, by which he could test the height of the water in the boiler, and ascertain whether it contained an adequate quantity for the purpose of steam and safety. Upon opening the gauge cocks there was some difficulty in distinguishing between the emission of water and steam.

*Held*, that the evidence was not sufficient to charge the defendant with negligence;

That while a well-sustained light upon the test valves would render it more convenient to discover in the night-time whether water was discharged from the test valves when opened, the absence of such a light only required more care to be exercised in doing so;

That the defendant was not bound to furnish a fusible plug in the crown sheet of the boiler.

MOTION by the plaintiff, Margaret Leary, as administratrix, etc., of John W. Leary, deceased, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the granting of the defendant's motion for a nonsuit, after a trial in the Superior Court of Buffalo on the 1st day of May, 1893.

*John Loughlin*, for the plaintiff.

*Martin Carey*, for the defendant.

Bradley, J.:

The plaintiff charges that the death of her intestate was caused by the negligence of the defendant. A nonsuit was directed by the trial court.

The plaintiff's intestate was a fireman in the discharge of his duty as such upon the defendant's locomotive engine which was drawing a train of freight cars at the time in question. His death was the result of injuries received from the explosion of the boiler, which also caused the death of the engineer. There is no dispute about the facts. The boiler of the engine exploded because the water in it was permitted to get too low. The explosion was the necessary consequence of the cause which produced it. The engineer was a competent man for the position he occupied. The engine was in good condition for service. And the only question is whether it was properly equipped with the means or apparatus to enable the engineer to gauge the water in the boiler. There were two injectors on the engine properly located for the purpose of taking water, when required, from the tank into the boiler. With the means for such supply no fault is found. Upon the boiler were gauge cocks accessible to the engineer by which he could test the height of the water in the boiler, and ascertain whether it contained an adequate quantity for the purpose of steam and safety. This he had failed to do at the time in question. The water had fallen about fourteen inches below the crown sheet, which became so heated that the stay bolts were ineffectual to hold it to its place, and the necessary consequence was the explosion. This would have been obviated by a supply of water sufficient to cover it. The crown sheet is said to have been twenty inches below the upper surface of the boiler. This condition of the water in the boiler was attributable to the failure of the engineer to use the means which he had of ascertaining the necessity of a further supply of water in the boiler and to furnish it by the use of the injectors. The try cocks were in good order. The time of the explosion was on a December morning before daylight. The weather was very cold. And there is some evidence tending to prove that by the sound on opening the

gauge cocks there might be some difficulty in distinguishing between the emission of water and steam, and, therefore, it may be said that if he applied the test by the means provided, he could by the discharge of steam, have been misled into the belief that it was water.

It is insisted by the learned counsel for the plaintiff that it was the · duty of the defendant to furnish better facilities for the engineer to ascertain the stage of the water in the boiler; that there should have been provided a stationary light to enable him to see the valve or test cocks in the night-time, or that there should have been a glass gauge in like manner lighted; but more especially it is urged that there should have been in the crown sheet what is known as a fusible plug. The duty of the defendant was such that it was required to use reasonable care in furnishing its employees with suitable implements, apparatus and machinery for the service in which they were engaged. This duty did not demand of it the supply of the very best means which could be devised. The requirement is satisfied when they are provided with appliances, which in that sense of the term are reasonably safe, in good condition and adequate to the purpose in view. And then the fact that the use of them is or becomes unsafe by want of due care on the part of the employees, does not charge the master with injurious consequences so occasioned to them from such use. (*Stringham* v. *Hilton,* 111 N. Y. 188; *Kern* v. *De Castro & D. S. R. Co.,* 125 id. 50.)

It is sufficient that the apparatus is in good condition of repair and is such as is ordinarily or generally in use for the like purpose. (*Hickey* v. *Taaffe,* 105 N. Y. 26.)

The application of these general principles to the present case would seem to relieve the defendant from the charge of negligence. While a well-sustained light upon the test valves would render it more convenient to discover in the night-time whether water is discharged from them when opened, the absence of light requires only more care to do so. The same may be said of a glass gauge exposed to light with the qualification that, as appears by the evidence, it might become clogged and unreliable. Then it would be worse than useless. And although a fusible plug in the crown sheet would by the melting of its filling make an opening for the passage of steam into the fire box and thus give warning, this might also have the

effect to stop the train and bring danger of collision in the rear as well as to cause delay in travel and transportation upon the railroad. The engineer knew that he had neither of those appliances to relieve himself from care in using the means provided. He had the infallible gauge cocks to test and ascertain the height and adequacy of the water in the boiler, and as must be assumed sufficient skill to do it intelligently.

So far as appears by the evidence the fusible plug is not used on railroad locomotives. It is, however, used to some extent upon stationary engines and upon some in marine service other than war vessels. In the cases where so used it may be done without danger and with less inconvenience.

The calamity in question must, therefore, be deemed the result of the negligence of the engineer, and not the co-operative negligence of him and the defendant. And as one of the hazards assumed by the plaintiff's intestate when he entered into the defendant's service was that arising from the negligence of his co-employees, the alleged cause of action is not supported.

The motion for the nonsuit was, therefore, properly granted; and the view here taken renders it unnecessary to consider any other exception, as none of the evidence excluded or stricken out could have had any essential bearing in support of the action.

The motion for a new trial should be denied and judgment directed for the defendant.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Plaintiff's motion for new trial denied, with costs, and judgment ordered for the defendant upon the nonsuit.