If not, then the tax complained of was illegal, because, as pointed out, there was in existence no legislative mandate which authorized the same or such injustice. If the contention of the defendants is correct, may they not insist that even a third sewer may be constructed in South Hamilton street for the sole accommodation of the owner of some particular piece of property, which is at a much lower grade than any of the rest, and then declare that the cost of such sewer, if constructed so as to accommodate all, should be levied equally upon the owners of property abutting upon each side of said street, according to the number of front feet owned by them respectively? As before suggested, we think the proposition is absurd, has no support in reason or in law, except where the Legislature has seen fit to authorize such iniquity, which it has not done in this case.

We conclude that the assessment or reassessment made by the defendants was made upon a wrong principle and contrary to the uncontradicted facts, and therefore should be annulled, and declared void as to the relators, with costs.

NASH, J., concurs.

HEALY v. BUFFALO, R. & P. RY. CO.

(Supreme Court, Appellate Division, Fourth Department.    March 7, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—APPLIANCES.

Where a railroad company furnished for a locomotive a water gauge guard of a kind in general use, though not as safe, in the opinion of experts, as another kind used extensively, the company was not guilty of negligence rendering it liable for an injury to a fireman from the bursting of the water gauge.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 183, 188, 214.]

2. SAME—FELLOW SERVANTS.

In so far as an injury to a fireman was the result of the engineer's negligence in failing to inspect the water gauge, the railroad company is not liable; the engineer and fireman being fellow servants.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 503.]

3. SAME—NEGLIGENCE OF MASTER—INSPECTION.

Failure of an engine inspector to inspect a water gauge of a locomotive, when such inspection would have shown that it was worn out and no longer fit for use, was not such negligence as to render the railroad company liable for injury from the bursting of the water gauge.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 235–242.]

Appeal from Trial Term, Cattaraugus County.

Action by Leonard J. Healy, an infant, by Thomas H. Dowd, his guardian ad litem, against the Buffalo, Rochester & Pittsburg Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

James S. Havens, for appellant.
Thomas H. Dowd, for respondent.

McLENNAN, P. J.   About 8 o'clock p. m. on the 18th day of September, 1904, while the plaintiff was employed as fireman on one of defendant's switch engines being operated in its yard at East Salamanca, N. Y., the water glass attached to such engine exploded in such manner that a piece of the broken glass was forced through the water gauge guard, struck the plaintiff in the eye, and caused the loss of its sight.   To recover the damages resulting from such injury this action is brought.

At the time of the accident the plaintiff was 20 years of age, had been in defendant's employ continuously for about three years.   First, for about a year he was engaged in coaling engines at Ashford, N. Y., a junction point on defendant's road.   After that for about two years he was employed as fireman upon engines running regularly between that point and Rochester, N. Y., or Gainesville, Pa.   He then went to Salamanca to take the position of "hostler," and that was his regular employment at the time of the accident and for about three weeks previous.   "The duty of a hostler is to take an engine when it is brought in out of service, and keep it until it goes out again—get it ready to run on the road.   After the hostler takes charge it is run over the pit, and then there is the engine inspector that inspects every engine that goes over the pit, thoroughly."   After going to Salamanca, when the plaintiff did not have work to do as hostler, he acted as fireman upon the yard engines, as occasion required, and was so employed on engine No. 156 when he received the injuries complained of.   Within a few minutes after assuming the duties of fireman on such engine, while looking at the water gauge, as it was his duty to do, the explosion occurred with the result above stated.

The evidence indicates that the plaintinff was a bright, active, intelligent young man, fully understood the duties of a fireman, and at least in a general way was familiar with the methods adopted by the defendant for the conduct of its business in the yard in question.   It is urged on behalf of the respondent that the evidence tends to establish that the defendant was guilty of negligence upon two grounds and so as to justify the verdict rendered by the jury:   First, because it had not equipped the engine in question with a safer or better style or pattern of water gauge guard; and, second, because it failed to properly inspect the water glass which exploded, it being claimed that a reasonable inspection would have disclosed that it was so defective as to render its use unsafe.   Practically those were the only questions involving the defendant's negligence submitted to the jury, and it is not claimed that any other could be predicated upon the evidence. The jury must have determined one or both of such propositions favorably to the plaintiff; therefore their verdict.   If the evidence did

not warrant such conclusion as to both, the judgment and order appealed from must be reversed.

The evidence conclusively establishes that the kind or pattern of water gauge guard, which inclosed the tube or water glass which exploded, was in general use; had been adopted by practically all the railroad corporations in the country. It was the kind used by the New York Central Railroad Company and other equally important and well-known railroad corporations. The Baldwin Locomotive Works, which manufacture practically 50 per cent of the locomotive engines used in the United States, equip their engines with the same style or pattern of water gauge guard. The evidence, however, tended to show that there were other kinds of water gauge guards also extensively used, which were safer, and that the defendant had about one-half of its engines equipped with such other alleged safer guards. It is the settled law in this state that an employer does not owe to his employé the legal duty of furnishing the best known appliances in the conduct of his business in order to protect such employé against injury. He is only required to furnish such as are reasonably safe, and in selecting one of several appliances devised for doing a particular work, and in determining which is the safer, he may rely upon the judgment of others engaged in the same business, and, if the appliance selected by him is in general use and has been generally adopted, he is not liable to an employé who may be injured because of the use of the appliance so selected, notwithstanding it may appear that another kind or pattern of such appliance, also in use, was safer and less liable to injure an employé operating or in charge of the same. Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483; Sisco v. L. & H. R. R. Co., 145 N. Y. 296, 39 N. E. 958; Coppins v. N. Y. C. & H. R. R. R. Co., 43 Hun, 26; Frace v. N. Y. L. E. & W. R. R. Co., 143 N. Y. 182, 38 N. E. 102; Flinn v. N. Y. C. & H. R. R. R. Co., 142 N. Y. 11, 36 N. E. 1046; Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813; Leary v. Lehigh Valley R. R. Co., 76 Hun, 575, 28 N. Y. Supp. 187. In view of the evidence bearing upon this proposition and considering the authorities referred to, it must be held as matter of law that the defendant was not guilty of actionable negligence because the engine upon which the plaintiff was employed as fireman was equipped with the water gauge guard in question. As we have seen, it was such a guard as was in general use and had been adopted by practically all great railroad corporations of the country as well as by the largest manufacturer of locomotive engines, and therefore we think the defendant was not chargeable with negligence for having used such appliance, notwithstanding there were others which in the opinion of experts were safer and the use of which was less liable to result in injury to an employé.

While the conclusion thus reached must result in a reversal of the judgment, because the verdict of the jury may have been based solely upon such alleged ground of negligence, we deem it proper to consider the other proposition imputing negligence to the defendant, which was submitted to the jury by the learned trial court. A water gauge such as is used upon a locomotive engine is so familiar to all it hardly need be

described. It is located in the cab of the engine where it can readily be seen by the engineer and fireman. Its purpose is to inform them at a glance of the amount of water there is in the boiler, and is therefore almost constantly observed by one or both of them. It consists of a small glass tube, connected with the boiler in such manner that the amount of water in the boiler is indicated in the tube, and so that steam may be forced through it for the purpose of removing any discoloration or sediment on the inside which would tend to prevent the water line from being distinctly seen, or would prevent the water from readily flowing into it. The glass tube which exploded had been put in place about two weeks before the accident. It was then new and of the very best quality made. The uncontradicted evidence tends to show that such tubes, although perfect, very often break when first used and without any known cause; others with the same use will last for many months; that their life is practically as uncertain as that of a lamp chimney; that, although apparently perfect, they may break almost instantly when first used, while others whose apparent condition is not as good, may last for a long time. There is some evidence tending to show that, from an examination of small pieces of the tube in question, it was discovered that it had been worn thin upon one side, and that there were certain hair lines which would have been disclosed if proper inspection had been made; that such tube was practically worn out, and that its longer use would be unsafe. We think upon the evidence it cannot be said that the defendant owed the duty to the plaintiff of having such water glass inspected in such manner as to have disclosed its defects, if they existed, by any person other than the engineer; and, if such failure to inspect was the neglect of the engineer, clearly the plaintiff cannot recover, because they sustained to each other the relation of co-employés. It would be unreasonable to hold that every time an engine was run over the ash pit the engine inspector was required to examine and see that every part of the engine was in perfect repair, to see to it that the handle of the lever just released by the engineer was not cracked, that some valve or stopcock immediately under his control was not loose, or that some other defect within his immediate observation did not exist. If such an inspection was required, it is clear that it would have occupied days instead of minutes, the length of time such engines usually stood over the pit. Nor is there force in the suggestion that such engine should have been sent to the repair shop for such an examination, or for repairs, when there was nothing to indicate to the company that the same was needed. No defect had been reported by the engineer, and therefore there was no reason to suspect that an appliance which was constantly under his observation was defective, when by the rules of the company it was made his duty to report any defect discovered by him.

We think the duty of the engineer upon the engine in question is concisely stated in the headnote in Manning v. Genesee River & Lake Ontario Steamboat Co., 66 App. Div. 314, 72 N. Y. Supp. 677, recently decided by this court:

"Where a water gauge attached to a steamboat boiler is fitted with a glass which is liable to break at any time, and the operation of replacing the.

broken glass can be readily performed by turning off the valves at either end of the gauge and thus shutting off the water, and then taking out the defective glass and putting in a new one from a supply kept on hand, the duty of replacing the defective glass is incumbent upon the engineer in his character as a servant."

In the case at bar, while there is evidence tending to show that it was not the duty of the engineer operating a switch engine in the yard to remove a defective water glass, it is established beyond dispute that it was his duty to report any defect in such appliance which he discovered. No defect in the water glass in question was reported by him, and we think actionable negligence cannot be predicated upon the fact that the defendant failed to discover such defect, in the absence of a report or information by the engineer to that effect. We conclude that the evidence wholly failed to establish that the defendant was guilty of actionable negligence, because it failed to make any other inspection than it did in order to discover the defect in the water glass which exploded, even if a discoverable defect existed.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide event, upon questions of law only; the facts having been examined and no error found therein.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined and no error found therein. All concur, except HISCOCK, J., not voting; he having ceased to be a member of the court.