McGRATH v. FIBRE CONDUIT CO.

(Supreme Court, Appellate Division, Second Department.   November 22, 1907.)

1. MASTER AND SERVANT—INJURY TO EMPLOYÉ—NEGLIGENCE—MACHINERY.

A standard machine for shredding wood for pulp, fully equipped and in perfect order, supplied with a hood, which experience has demonstrated to serve its purpose of protecting operatives, may be run by a master without involving liability for negligence, in so far as the machine is concerned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 203.]

2. SAME—ANTICIPATING ACTION OF EMPLOYÉ.

A master is not negligent in not supplying means for stopping the operation of the knives of a wood pulp shredding machine while the shredded pulp is being taken away from the machine, where the knives, revolving under a hood, cannot injure any one not approaching them from the under side of the hood, as such approach, being unnecessary, is not to be anticipated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 256.]

3. SAME.

In a wood pulp factory, an iron tank, which had been used to warm tar, had been placed in front of the shredding machine to receive the shredded pulp as it fell from said machine. The operator had been supplied with a fork to remove the pulp therefrom to the beater. According to his statement, he first tried a broomstick, and then the fork, to clear the pulp from under the knives, and, they being broken by coming in contact with the knives, he told the superintendent the fork was of no use, and was instructed to get the pulp out as best he could, whereupon he entered the tank, and in attempting to remove the pulp fell forward by reason of the greasy and slippery condition of the tank, his hand coming in contact with the knives, which were covered with a hood, except on the under side. *Held,* that the employer was not chargeable with negligence because of the slippery condition of the tank, which was as obvious to the employé as to the master, as it was not to be anticipated that the employé would enter the tank, and slip and fall in such manner as to come in contact with the knives.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 256.]

Appeal from Trial Term.

Action by Patrick McGrath against the Fibre Conduit Company. From a judgment for plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, MILLER, JENKS, and HOOKER, JJ.

M. B. Patterson, for appellant.

Frank Comesky, for respondent.

WOODWARD, J.   The defendant is engaged in manufacturing a wood pulp tiling.   The wood pulp is delivered at its factory in sheets, and it is necessary in the process of manufacture to slit or shred this pulp, that it may be reduced to a pasty substance and molded.   The

plaintiff was employed as a handy man about the factory, and had been engaged in operating a machine known as a beater—a machine that took the pulp after it had passed through the shredding machine, where the plaintiff was injured. On the day of the accident, accepting the plaintiff's theory of the occurrence resulting in the injury to his hand for which he is seeking compensation, the foreman of the factory directed the plaintiff to start up the shredding machine, giving him charge of the same. This shredding machine is comparatively simple, and consisted of a feeding roller and a shaft, on which were a number of knives, which were caused to revolve during the process of shredding, much after the manner of the ordinary chopping device used on farms for cutting up fodder. This revolving shaft, with its knives, was about 30 inches long, and the knives were covered with a hood or shield. There is some conflict of evidence as to whether the knives were wholly covered, but the evidence is undisputed that the knives were covered with a hood, which reached out over the knives and covered them all, except a very small portion, which ran below the hood. The machine was of a standard make, was in perfect order, and the hood was such as was commonly in use on these machines, so that in respect to the machine itself it could not be said to be negligent on the part of the master to maintain it in operation, for negligence is not to be determined by the application of knowledge acquired after an accident to determine what might possibly have prevented the occurrence, but by the standard of reasonable care, by what would suggest itself to reasonable minded men in viewing the machine before the accident. Clearly a standard machine, fully equipped and in perfect order, supplied with a hood which experience had demonstrated to serve its purpose of protecting operatives, may be run without involving liability for negligence, in so far as the machine is concerned.

This does not seem to be seriously disputed by the respondent; the only negligence asserted in this respect being that there was no means of stopping the operation of the knives while the shredded pulp was being taken away from the machine. This seems to us likewise to be a matter which could not be relied upon as constituting actionable negligence; for the knives, revolving under the hood, could not cause injury to any one who did not approach the knives from the under side of the hood, and this was not to be anticipated, for it was entirely unnecessary. Indeed, the plaintiff does not seriously rely upon this alleged negligence. It appears that a tank or iron box about six feet square, which had been used to warm tar, had been placed in front of this machine for the purpose of receiving the shredded pulp as it fell from the machine, and that the defendant had supplied a three-tine fork for the purpose of removing the pulp to the beater. The plaintiff's theory of the accident is that he tried to use this fork; that he had previously tried to use a broomstick to clear the pulp from under the knives; that this broomstick was broken by coming in contact with the knives; that he then tried to use the fork, and this was likewise broken; that he then went to

the foreman or superintendent, and told him the fork was of no use; that he was told to get the pulp out the best that he could; that he then entered this iron tank, which he says was greasy and slippery; and that in attempting to remove the pulp he fell forward, and his hand came in contact with the knives. So that the real foundation of negligence, so far as we are able to discover, rests upon the alleged greasy and slippery condition of the tank, a fact which must have been as obvious to the plaintiff as to the defendant. The plaintiff knew the conditions, he knew that the knives were revolving, he knew that they had already broken the broomstick and the fork which he had tried to use, and, if the tank was slippery, he was aware of that fact. But, even supposing the tank was greasy and slippery, and that the defendant knew it, was it to be anticipated that the plaintiff would enter this tank and slip and fall in such a manner as to come in contact with these hooded knives? Let any intelligent man place himself in this factory, looking at this simple chopping machine, with its knives guarded by a hood which concededly covered them so that they could be reached only from the under side; and would he say that the defendant was negligent because the tank was greasy and slippery? Would he anticipate that such an accident as the plaintiff alleges was likely to occur? This is the real test, and it is doubtful if any man of ordinary intelligence, not knowing of the alleged facts in this case, would ever think of the possibility of such an accident. If the accident really happened in the manner described by the plaintiff, then he is most unfortunate; but no one could reasonably have anticipated the result, and it is not negligence on the part of the master to provide appliances which, to reasonably prudent men, would not suggest the danger.

But the plaintiff is flatly contradicted in his testimony by his own witness and by the witnesses for the defendant. The defendant's theory, fully sustained by the plaintiff's own witness, is that the plaintiff had left his own machine, and had undertaken to remove the pulp from the shredder; that he got into the tank and used his broomstick, which was broken; that he then used the fork with like results, and then discarded the fork, the appliance furnished by the master, and which was at least safe, if not efficient, and undertook to take the pulp away in his arms; that in so doing he reached up under the revolving knives, knowing that they were revolving, and sustained the injury complained of. The evidence strongly preponderates that this is the truth about the accident; that the plaintiff was a mere volunteer in the work of removing the pulp; and that he entered the tank of his own motion, discarding the implements which had been provided, and using his hands in a manner so careless that he received the injury, notwithstanding that he had just before broken two implements in an effort to perform the work, and must, therefore, have been fully apprised of any danger existing. The pictures of the machine in evidence, which the plaintiff concedes show them as they existed on the day of the accident, as well as all the evidence of the plaintiff's own witness and those of the defendant, go to show that the defendant's theory of the accident is the true one,

and the facts, in either view, do not constitute actionable negligence on the part of the defendant.

The judgment and order appealed from should be reversed.

Judgment and ordered reversed, and new trial granted; costs to abide the event. All concur.