STEDMAN v. TOWN OF OSCEOLA.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

1. HIGHWAYS (§ 191*)—DEFECTS—NEGLIGENCE OF OFFICER.

In an action against a town for injuries received while traveling on a highway, negligence cannot be imputed to the town superintendent because of the width of the road, where it was over 10½ to 12 feet wide and the territory which it traversed was sparsely settled; there being no showing that other accidents had been caused by the narrowness of the road or that the superintendent had in recent improvements abridged its width.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 481, 482; Dec. Dig. § 191.*]

2. HIGHWAYS (§ 192*)—DEFECTS—NEGLIGENCE OF OFFICER.

Where there is nothing so inherently dangerous in the condition of an infrequently traveled road as to call for prompt completion of a job of leveling and scraping started by the direction of the town superintendent, the fact that stones scraped off of such road were left laying at the side thereof for a few days, while the workmen were engaged in other parts of the town, and that a person was injured by being dragged over them by a frightened horse will not, in view of the discretion lodged in the superintendent, sustain a charge of negligence.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 483–485; Dec. Dig. § 192.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, Lewis County.

Action by Mary R. Stedman against the Town of Osceola. From a judgment for plaintiff and an order denying a new trial (71 Misc. Rep. 186, 128 N. Y. Supp. 341), defendant appeals. Reversed, and new trial granted.

Argued before SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

James F. Hubbell, for appellant.
D. Francis Searle, for respondent.

SPRING, J. The action is to recover damages for personal injuries claimed to be sustained by the plaintiff by reason of the defective condition of a highway in the defendant. The town of Osceola contains no village or city, has 600 inhabitants, 44 miles of highways, and two-thirds of the entire area of the town consist of uncultivated, unproductive land. The highway in question was in a sparsely settled part of the town and infrequently traveled.

On the 15th of June, 1910, by direction of the town superintendent, this road its entire length was run over by the town road scraper, and the dirt, sods, and stones from the sides of the traveled part of the highway were scraped into the center, so that the crown or apex was about 18 inches higher than the land at the ditch on either side, and the traveled part was uneven. A day or two later the road was dragged over with a spring tooth harrow, breaking up the sods, and the stones were raked out and piled along the side of the traveled part of the road. These piles were from 10 to 20 feet apart, varied in size, containing perhaps a peck or half bushel of stones in each pile, and the heaps were from 1 to 1½ feet in length and from six inches to a foot in height. The town superintendent intended to have these stones removed and the road further leveled, but the men were engaged in other parts of the town repairing the roads with the scraper. As he expressed it, "The workmen were at work, but had not got that far yet." Men were engaged in removing the stones piled up at the side of the highways at the time of the accident, and on the following day reached the place where the plaintiff was injured. The traveled part of the highway inside the ditches was from 10½ to 12 feet, and it had not been narrowed any by the work done upon it.

The plaintiff owned a small farm on this road, occupied by herself and her husband. The road extended westerly from her premises for about a mile, but there was no other dwelling. About 10 o'clock in the forenoon of June 24th, the plaintiff was leading an old gentle horse to pasture along the northerly side of this highway. A few rods east of the house she met two men in a road wagon, one of the rear wheels of which hit the horse, causing him to jump, throwing the plaintiff to the ground. One of her feet was caught in one of the stone piles, and she was dragged over it, inflicting the injuries for which she has recovered against the town.

The plaintiff finally testified that she did not see the wagon wheel strike the horse, but narrated circumstances which may support the

inference that such was the fact, although the occupants of the wagon, who were the supervisor and town superintendent, testified that they did not know of any such contact, nor were they aware that the plaintiff was thrown to the ground at all or that the horse jumped.

The court permitted the jury to base its verdict upon either the "narrowness" of the highway, or "the existence of these stone piles there." In his opinion on the motion for new trial he said:

"However, it seems to me that, were the only criticism of the road in question its width, I would be compelled to hold that, in view of the little travel upon the highway and the sparsely settled condition of the adjacent country, the road was a reasonably proper one and for the public a reasonably safe and suitable road for travel."

It may be the jury based its verdict upon the charge that the road was of insufficient width, and upon this appeal we must so assume.

[1] We think negligence was not imputable to the town superintendent because of the width of the road. The travel was not extensive, and there was nothing to obstruct the view of approaching teams, and with the exercise of reasonable caution they could pass each other without difficulty. Whether of sufficient width for two teams to pass readily is not, however, important, for there was plenty of room for the horse and wagon to avoid the horse which the plaintiff was leading. The stone pile on which the plaintiff claims she fell was outside the track, and the piles were generally on the outer edge of the road. There is no claim that the width of the road had been abridged by the town superintendent, and there is no proof of any other collision or accident due to the narrowness of the road.

[2] Nor do we think the town superintendent was negligent in piling the stones alongside the road and leaving them from the 17th to the 24th of June while he was making repairs to the highways throughout the town. In determining what constitutes a defective highway the surrounding circumstances must be weighed. In a thickly settled community there is a greater obligation upon the town superintendent to keep the highways in repair for public travel than in an isolated part of the town where there is very little use of the highways. Glasier v. Town of Hebron, 131 N. Y. 447, 452, 30 N. E. 239; McKone v. Village of Warsaw, 187 N. Y. 336, 339, 80 N. E. 212, et seq.

The omission of duty by a public official which is sought to be made responsible for damages sustained cannot be defined or fixed by any inflexible rule. It is an elastic variable term, dependent upon the particular facts and circumstances. In this case the town was distinctly a rural community. The superintendent was engaged in the month of June with his gang of men and with the one town road scraper in repairing the highways. The expenditure of the moneys intrusted to him to the best advantage must be considered. He had teams and men employed, and they must be kept at work. He could not conveniently stop the scraper and clean up the work as he went along. The labor unavoidably caused some tearing up of the earth and disturbance to the bed of the highway, interfering to some extent with the safety and convenience of the traveler upon it. He

therefore removed the stones from the traveled part of the highway, broke up the sods, and smoothed the earth so that the road was fairly passable until he could finish it as he expected. He exercised his judgment in the performance of the work he was called upon to perform.

Again, there was nothing in the condition of this highway which made it inherently dangerous. There was no high embankment, no bridge or steep slope or sluice. Nothing calling for prompt completion of the job. Such an accident as the plaintiff met with could not be foreseen. We think the measure of responsibility upon this town superintendent would be altogether too burdensome to charge him with negligence in piling these stones by the roadside and leaving them for a week.

The judgment should be reversed.

Judgment reversed, and a new trial granted, with costs to appellant to abide event. All concur.

---

BUFFALO, L. & R. RY. CO. v. HOYER et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

1. EMINENT DOMAIN (§ 52*)—CONDEMNATION PROCEEDINGS—"PARK."