(80 Misc. Rep. 560.)

## KENT v. TOWN OF PATTERSON.

(Supreme Court, Trial Term, Putnam County.   May 3, 1913.)

1. CUSTOMS AND USAGES (§ 1*)—DEFINITION—"CUSTOM."

   The word "custom" is defined by the Standard Dictionary as the old and general usage that has obtained the force of law and has established a recognized usage of a particular trade or vocation, being also synonymous with "manner," "practice," etc.

   [Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 1; Dec. Dig. § 1.*

   For other definitions, see Words and Phrases, vol. 2, pp. 1801–1805.]

2. CUSTOMS AND USAGES (§ 1*)—DEFINITION—"CUSTOMARY."

   The word "customary" is defined as, according or conforming to custom or usage; established by custom; usual; habitual.

   [Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 1; Dec. Dig. § 1.*

   For other definitions, see Words and Phrases, vol. 2, p. 1805.]

3. NEGLIGENCE (§ 124*)—EVIDENCE—CUSTOM.

   Evidence of a custom in doing an act of the nature involved is admissible for defendant in answer to evidence offered by plaintiff tending to show negligence.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 235–238; Dec. Dig. § 124.*]

4. HIGHWAYS (§ 210*)—DEFECTS—FRIGHTENING HORSES—EVIDENCE.

   In an action against a town for damages for injuries from plaintiff's horse running away by being scared at stones placed by a highway commissioner along the side of the highway, after taking them from the beaten path, evidence that other commissioners had taken rocks from the highway and placed them beside the road was admissible for defendant.

   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 480, 527–532; Dec. Dig. § 210.*]

5. HIGHWAYS (§ 195*)—HIGHWAY COMMISSIONER—DUTY.

   It was the legal right, as well as duty, of a town highway commissioner to remove stones from the bed of a highway and place them beyond the roadbed.

   [Ed. Note.—For other cases, see Highways, Dec. Dig. § 195.*]

6. HIGHWAYS (§ 195*)—NEGLIGENCE OF HIGHWAY COMMISSIONER.

   A town highway commissioner's negligence in taking stones from the beaten road and placing them beside the highway must be determined from the circumstances as they existed at the time.

   [Ed. Note.—For other cases, see Highways, Dec. Dig. § 195.*]

7. HIGHWAYS (§ 210*)—DEFECTS—ACTIONS FOR INJURIES—ADMISSION OF EVIDENCE.

   Where, in an action for injuries from a horse running away by being frightened by stones taken away from the beaten path of a highway by the highway commissioner and placed beside the road, plaintiff proved that other horses of ordinary gentleness were frightened by the stones, defendant could prove that other horses of ordinary gentleness were not frightened.

   [Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 480, 527–532; Dec. Dig. § 210.*]

Action by N. Charles Kent against the Town of Patterson.   On defendant's motion to set aside the verdict, and for a new trial.   Motion denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas T. Hill, of Carmel (George C. Andrews, of Tarrytown, of counsel), for plaintiff.

Clayton Ryder, of Carmel (John E. Mack, of Poughkeepsie, of counsel), for defendant.

MORSCHAUSER, J.   This action is for negligence against the town, and, if the highway commissioner was not negligent in the conduct of his management of the highways, then the action must fail.

The plaintiff relies on the alleged negligence of the highway commissioner in placing two stones that had been taken out of the beaten path and placed upon the side of the highway, that frightened plaintiff's horse, causing it to run away and throw the plaintiff out of the wagon, from which he sustained injuries.   This is the charge made against the defendant.   On the trial the plaintiff made proof as to the alleged negligence of the highway commissioner, and the defendant to meet that proof introduced proof that other commissioners of highway in the county of Putnam had taken out rocks in the beaten path in the highway and placed them alongside of the road similar to the manner in which rocks were left in this particular case.   The proof was as to the highway in the vicinity of this highway.   The defendant also gave proof that other persons had on various occasions driven their horses past these two stones in question and that their horses did not become frightened.   The defendant objected to this evidence, and the objections were overruled, and upon the exceptions moved for a new trial.   I was constrained to believe that I would have to grant this motion, but upon reflection and examination of the authorities I believe the proof was competent.

[1]  The word "custom" has been defined in the Standard Dictionary of the English language as follows:

"The old and general usage that has obtained the force of law and established a recognized usage of a particular trade or vocation, as the custom of merchants.   Synonyms, manner, practice, etc."

[2]  "Customary" has been defined as follows:

"According or conforming to custom or usage.   Established by custom, usual, habitual.   Hold or held by custom as a tenant or his tenancy."

Said Mr. Justice Vann, in Shannahan v. Empire Engineering Corporation, 204 N. Y. 543, 550, 98 N. E. 9, 11:

"When such a question of negligence is involved, general usage and practice is competent to show ordinary care, just as one may show the purchase of a standard article from a reputable dealer.   The common usage of the business is a test of negligence but not a conclusive or controlling test.   Bennett v. Long Island R. R. Co., 163 N. Y. 1, 4 [57 N. E. 79]; Burke v. Witherbee, 98 N. Y. 562, 566; Thompson's Negligence, par. 3770; 29 Cyc. 609.   While it is not always true that what everybody does anybody may do without the imputation of negligence, still it is competent to show the general habit of mankind in the same kind of business as tending to establish a standard by which ordinary care may be judged.   We have said that 'ordinarily what everybody does is all that anybody need do.'.   Boyce v. Manh. Ry. Co., 118 N. Y. 314, 319 [23 N. E. 304, 305].   Such evidence is received for what it is worth in view of all the circumstances of the particular case, and, under proper instruction from the court as to its inconclusive nature, the jury has a right to give it such consideration as they think it should receive in connection with all the other facts."

I have examined the record on appeal in the Shannahan Case (Supreme Court Library, White Plains, vol. 99 Court of Appeals), and find that the learned counsel for the respondent there submitted a very comprehensive brief on the subject involved in this inquiry. Among the authorities there submitted are found the following:

In 29 Cyc. 609, it is said:

"As a general rule custom and usage of well-appointed and well-managed concerns in the business under investigation is competent evidence on the question of the care and diligence required in the proper conduct of the business. * * * To be admissible, proof of custom must be limited to the vicinity of the accident, and to property similarly situated or under similar circumstances."

In Wigmore's Pocket Code of Evidence, par. 355, it is said that evidence is admissible to show:

"The condition or quality of an object in respect to degrees or measures of negligence, danger, insufficiency, unreasonableness, cruelty, unskillfulness, and the like, or their opposites, as evidenced by instances of similar conduct or habits of other persons or animals."

In Bennett v. Long Island R. R. Co., 163 N. Y. 1, 4, 57 N. E. 79, 80, the plaintiff was injured because of an improper switch maintained by defendant in its construction work. The court said:

"The motion for nonsuit having been denied, the defendant proceeded to introduce evidence tending to show that the switch actually used was such as is ordinarily used during the construction of railroads, and that during the constructions switches are never locked and never targeted. * * * At the close of the trial, therefore, the uncontradicted testimony showed that the switch in use had not only performed its work perfectly during the months that it had been in operation and was a perfect switch of its kind, but further that the switch was of the standard variety found on construction work, and that it was not customary either to lock or target such switches."·

In Harley v. Buffalo Car Manufacturing Co., 142 N. Y. 31–35, 36 N. E. 813, the plaintiff was injured by the giving away of what was called a Buffalo belt fastener used by the defendant. The Court of Appeals said:

"The witnesses differ as to which of the fasteners in use was the safest and best; some of them giving preference to one kind. * * * A number of witnesses who apparently had had the greatest experience with the Buffalo fastener gave it the preference for safety and efficiency. It was a patented article and had been manufactured, sold, and used for several years before this accident."

See, also, opinion of Earl, J., in Burke v. Witherbee, 98 N. Y. 562–566, concluding with the following sentence:

"What more could any reasonable or prudent man have to justify him in believing that this convenient appliance was also a safe and proper one?"

Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311. The same reasoning was applied where the plaintiff was injured by the breaking down of a scaffold.

Healy v. Buffalo R. & P. Co., 111 App. Div. 618, 97 N. Y. Supp. 801. The plaintiff was injured by the explosion of a tube or water glass claimed to have been imperfectly covered and protected.

Rich v. Pelham Hod Elevating Co., 23 App. Div. 246, 48 N. Y. Supp. 1067. Question of proper construction of an elevator.

In Schmahl v. Albany Brush Co., 61 Misc. Rep. 316, 113 N. Y. Supp. 768, plaintiff was injured while operating a circular saw in the defendant's factory. The court says:

"The defendant then called another witness who testified in substance that he had been in a similar manufacturing business for 37 years; that he had worked in seven or eight shops, all but one of them using such saws; and that he never saw any guards used in connection with them; and that he did not think a guard for such a saw was practicable."

In Wallace v. Central V. R. R. Co., 138 N. Y. 302, at page 307, 33 N. E. 1069, at page 1071, the plaintiff, a brakeman, was injured because telltales to give warning of an approach to a bridge were either absent or defective. The court said:

"This question was put to one of the plaintiff's witnesses: 'What is the usual and ordinary distance to erect these telltales from the bridge, or low structure?' This was objected to on the part of the defendant as incompetent, and the objection was sustained. We think this question was proper. It was competent for the plaintiff to show in some way that this telltale was placed too near the bridge to answer the purpose of the statute, and upon that point he could properly show how this road, and possibly other roads, constructed its telltales, and at what distance from the bridges."

See, also, Isham v. Post, 141 N. Y. 100, 35 N. E. 1084, 23 L. R. A. 90, 38 Am. St. Rep. 766; Carlson v. Phœnix Bridge Co., 132 N. Y. 273, 30 N. E. 750; McGrath v. Fiber Conduit Co., 122 App. Div. 424, 106 N. Y. Supp. 777; Civetti v. Am. H. & F. Corp., 124 App. Div. 345, 108 N. Y. Supp. 663; Devaney v. Degnon-McLean Const. Co., 79 App. Div. 62, 79 N. Y. Supp. 1050, affirmed 178 N. Y. 620, 70 N. E. 1098; Maynard v. Buck, 100 Mass. 40.

[3] Evidence of this character may be allowed in behalf of the defendant in response or answer to evidence on the part of the plaintiff tending to show negligence. Warden v. Tesla, 93 App. Div. 520, 87 N. Y. Supp. 853; Hornum v. McNeil, 80 App. Div. 637, 80 N. Y. Supp. 728; Gates v. Bowers, 41 App. Div. 612, 58 N. Y. Supp. 287.

[4] If, as Mr. Justice Vann says in the Shannahan Case, supra, when a question of negligence is involved, evidence of general usage and practice is competent to show ordinary care, and if evidence of the common usage of the business is a test of negligence, but not a conclusive or controlling test, it seems to me that it was competent in this case to show that the conduct of the defendant's highway commissioner in working the road and in removing the stones from the beaten path and to temporarily place them on the side of the road in question was the same method of performing the work carried on by other highway commissioners working similar roads in that locality.

In the case of Champlin v. Village of Penn Yan, 34 Hun, 33–37, the plaintiff was permitted to prove that, on another occasion prior to the accident, a flag similar to this one in appearance, suspended over the street and in a similar manner to frighten other horses when driven along the street under the same. Objection was made to the evidence on the ground that it was incompetent. The court said:

"We think the evidence was properly received, as showing to the jury that horses are at times frightened and shy at such objects. Some of the jury may have been ignorant of the habit of horses and of their natural tendency to be frightened at objects which they are not accustomed to see. It was certainly competent to prove how such sights are likely to disturb horses of ordinary gentleness when driven before carriages, and in places where they are not accustomed to pass."

In the case of Lane v. Town of Hancock, 142 N. Y. 510, on page 519, 37 N. E. 473, on page 475, Judge O'Brien, writing the opinion of the court, says:

"The elements which enter into the question of negligence are generally of such a nature as to make it a question of fact. Even where the general facts are not in dispute, as here, but the inference to be drawn from them is not clear and certain, but doubtful, the case must be submitted to the jury. But in every case there is always a preliminary question for the court as to whether there is any evidence upon which a jury could properly find a verdict for the party producing it, and upon whom the burden of proof is imposed. * * * Filer v. N. Y. Central R. R. Co., 49 N. Y. 47 [10 Am. Rep. 327]; Linkauf v. Lombard, 137 N. Y. 417 [33 N. E. 472, 20 L. R. A. 48, 33 Am. St. Rep. 743]; Hemmens v. Nelson, 138 N. Y. 517 [34 N. E. 342, 20 L. R. A. 440]. So that the practical question in this case is whether the commissioners were guilty of negligence. * * * "

On page 520 of 142 N. Y., on page 475 of 37 N. E., the court says:

"To keep all the roads in a large town under constant personal inspection is altogether impracticable."

And on page 521 of 142 N. Y., on page 476 of 37 N. E.:

"The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly. Hubbell v. City of Yonkers, 104 N. Y. 434 [10 N. E. 858, 58 Am. Rep. 522]; Glasier v. Town of Hebron, 131 N. Y. 447 [30 N. E. 239]; Monk v. Town of New Utrecht, 104 N. Y. 552 [11 N. E. 268]; Clapper v. Town of Waterford, 131 N. Y. 382 [30 N. E. 240]; Bryant v. Town of Randolph, 133 N. Y. 70 [30 N. E. 657]."

In the case of Stedman v. Town of Osceola, 147 App. Div. 220, at page 222, 132 N. Y. Supp. 28, at page 30, the court says:

"Nor do we think the town superintendent was negligent in piling the stones alongside the road and leaving them from the 17th to the 24th of June while he was making repairs to the highways throughout the town. In determining what constitutes a defective highway, the surrounding circumstances must be weighed. In a thickly settled community there is a greater obligation upon the town superintendent to keep the highways in repair for public travel than in an isolated part of the town where there is very little use of the highways. * * * The omission of duty by a public official which is sought to be made responsible for damages sustained cannot be defined or fixed by any inflexible rule. It is an elastic, variable term, dependent upon the particular facts and circumstances. * * * "

On page 223 of 147 App. Div., on page 31 of 132 N. Y. Supp., the court says:

"We think the measure of responsibility upon this town superintendent would be altogether too burdensome to charge him with negligence in piling these stones by the roadside and leaving them for a week."

In the case of Barrett v. Town of Walworth, 64 Hun, 526, on page 529, 19 N. Y. Supp. 557, on page 558, the court says:

"'Rocks and stones within the limits of the highway,' but not obstructing the traveled path, are not defects for which a town is liable. * * * Upon the highways of our country objects of various description will be found; many of them may cause horses to take fright, but to compel the authorities to remove them all would impose a too serious burden upon the public. There is a class of cases holding the highway authorities liable for obstructions placed in the highway, like piles of stones, lumber, or any object liable and calculated to frighten road-worthy horses. In such cases a question is presented for the decision of a jury as to the negligence of the town authorities. * * *"

On page 528 of 64 Hun, on page 557 of 19 N. Y. Supp., the court says:

"A reasonably safe and commodious roadbed must be maintained, so that the traveler can either by day or night pass over it without being exposed to unnecessary peril by objects therein. A very different roadbed, however, is expected and required in the highways of sparsely settled farming districts than is expected to be provided in cities and villages."

[5] The commissioner certainly had a legal right, and it was his duty, to remove the stones out of the bed of the road and to place them beyond the roadbed. If this be true, the accident complained of may have occurred within an hour or two after the commissioner of highways had deposited the rock in the highway that the horse passed. Therefore the right to take the stones from the roadbed and to place them on the side of the road must be conceded as a necessity and a justifiable act on the part of the commissioner, and, if so, it depends upon whether to a man of ordinary prudence it would appear that by placing the stones on the side of the highway would in that locality have a tendency to frighten horses of ordinary gentleness, traveling on said highway. If other horses passed the stone without fear and this horse was afraid, it simply shows that this horse differs from other horses in respect to objects that would frighten this horse and not others. The commissioner was not bound to perform his work so that it would not frighten restive animals upon highways, for stones may temporarily be placed upon the side of the roadbed and within the limits of the highway.

[6] A commissioner's negligence must be judged by all the circumstances as they existed at this place. The town of Patterson and adjacent towns are in a rough, hilly, rocky, and stony country. Innumerable rocks abound there, and it is very rough land. Consequently it must be expected that rocks will be encountered in the highways and byways of the towns located in that section of Putnam county, and it is to be expected that the conditions will be found different from places where the land is not so rough, hilly, and rocky. The taxpayers do the best they can to make the road passable and convenient for use, and in the use of it they do not expect to find a turnpike of every road, as to require them to have such condition would be prohibitive because of the great expense; but, nevertheless, under the law it is expected that they will make it safe for public travel and do nothing that will make it unsafe. All the commissioner did was to take two rocks out of the beaten path, place them temporarily upon the side of the highway, and for this act the town is to be charged with negligence. How else could he prove he was not negligent with-

out submitting proof to the jury as to what others, engaged in similàr work, do? Of course, it does not show he was not negligent, but establishes a standard by which ordinary care may be judged. Such evidence is received for whatever it 'is worth. In view of all the circumstances in each case, the jury has the right to give it such consideration as it should receive in connection with all the other facts in the case.

[7] The plaintiff proved on the trial that other horses of ordinary gentleness were frightened by these stones in question. See Wigmore on Evidence, vol. 1, § 461, p. 566; also, cases cited in the notes on page 568; Bemis v. Temple, 162 Mass. 342, 38 N. E. 970, 26 L. R. A. 254; Champlin v. Penn Yan, supra; Quinlan v. City of Utica, 11 Hun, 217, affirmed 74 N. Y. 603; Wooley v. Grand St. & N. R. R. Co., 83 N. Y. 121.

Why should not the defendant be allowed to prove the opposite, when the conditions are the same, and show that other horses of ordinary gentleness were not frightened by the stones? 162 Mass. 342, supra; Wigmore on Evidence and Wigmore's Pocket Code of Evidence, supra.

Motion to set aside the verdict and for a new trial, denied.